**PLAINFIELD PIKE GAS &
CONVENIENCE, LLC**

v.

**1889 PLAINFIELD PIKE
REALTY CORP.**

No. 2008–138–Appeal.

Supreme Court of Rhode Island.

May 3, 2010.

Joseph A. Lamagna, Esq., Pawtucket, for Plaintiff.

John O. Mancini, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

This appeal concerns a so-called "Lease Agreement" (contract or agreement) between the defendant, 1889 Plainfield Pike Realty Corp. (Plainfield Pike Realty)[1] and Dashrath Patel (Dashrath).[2] The plaintiff, Plainfield Pike Gas & Convenience, LLC (Gas & Convenience, LLC or LLC), claiming to hold an interest under that agreement as the nominee of Dashrath, appeals from: (1) a summary judgment in favor of the defendant; (2) an order denying its motion for relief from judgment; and (3) an order removing the plaintiff's attachment of the defendant's real property. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## I

### Facts and Procedural History

This dispute arises from a contract, executed in March 2002, for property at 1889 Plainfield Pike in Johnston, Rhode Island. The agreement identified defendant as the "landlord" and "Dashrath Patel * * * or his nominee" as the "tenant." The contract recited that the tenant could not assign the agreement without the prior written consent of defendant.

Under the agreement, the tenant agreed to pay a $200,000 initial fee in exchange for the right to lease the premises. That sum was to be refunded in the event that conditions precedent set forth in Section 2 of the contract were not satisfied. Said conditions included construction of a convenience store and gasoline sales facility on the property by defendant on or before September 1, 2003. According to plaintiff, the investors in Gas & Convenience, LLC deposited a total of $175,000 into various accounts as directed by defendant.

The gas station and convenience store were not constructed by September 1, 2003, but an amendment was executed that month that extended the time for construction. The amendment stated that construction would be completed within four months of its commencement, weather conditions permitting. Further, the amendment identified Dashrath as the tenant and restated that the tenant could not assign the agreement without the written consent of defendant.

According to plaintiff, construction of the gas station and convenience store began in March 2004. Shortly thereafter, plaintiff LLC was formed. The plaintiff claims it subsequently asserted itself as Dashrath's nominee in communications with defendant's agents.

Similar transactions were alleged to have taken place in Connecticut and Rhode Island between defendant's principal and some or all of the investors in plaintiff. In these transactions, the tenant also was listed as "Dashrath Patel or his nominee," and a limited liability company was formed that ultimately became the tenant under the various lease agreements.

At some point, Dashrath left the country and relocated to India. The convenience store and gas station were not completed as of 2007. As a result, plaintiff claims it made a demand for return of the $175,000, but defendant refused. The defendant ad-

---

1. The defendant has acknowledged that it is a party to the contract at issue in this dispute although the contract was executed in the name of what apparently is a predecessor corporation, 1889 Plainfield Pike Leasing Corp.

2. We refer to Dashrath Patel by his first name because there is at least one other party with the same surname involved in this matter. We intend no disrespect.

mits that the premises were never delivered to plaintiff, but it denies plaintiff had any right to the premises or return of the $175,000.

The plaintiff filed a complaint in February 2005, as well as a motion to attach the subject real property, which was granted. Because defendant did not answer, plaintiff filed an application for entry of a default judgment for failure to plead, which also was granted. Later, on December 8, 2005, defendant filed a motion to vacate the default judgment and remove the attachment. On February 20, 2006, the Superior Court vacated the entry of the default judgment, but continued the motion to vacate the writ of attachment. The defendant answered plaintiff's complaint on February 20, 2006.

On September 14, 2007, defendant filed a motion for summary judgment that ultimately was heard and granted by the Superior Court on April 1, 2008. Final judgment in favor of defendant was entered by the Superior Court on April 9, 2008. Shortly after the summary-judgment hearing, plaintiff received an affidavit that was executed by Dashrath which, it asserts, establishes that plaintiff was Dashrath's nominee under the agreement. The plaintiff moved for relief from judgment under Rule 60(b) of the Superior Court Rules of Civil Procedure, arguing that the delay in post from India was beyond its control and

amounted to excusable neglect.[3] The Superior Court denied plaintiff's motion.[4] Shortly after the grant of summary judgment, defendant moved to remove the attachment on its property, which motion was granted on April 24, 2008.

The plaintiff timely appealed from the final judgment, from the denial of its motion to vacate, and from the order removing the attachment. The plaintiff then filed a motion in this Court seeking a stay of the removal of the attachment pending appeal. This Court issued an order on May 7, 2008, denying plaintiff's motion to stay.

## II

### Discussion

#### A

#### Grant of Summary Judgment

■ The plaintiff argues that the Superior Court erred in granting summary judgment because questions of fact existed concerning whether plaintiff was a real party in interest. The defendant argues that plaintiff was neither a signatory to, nor a beneficiary of, the contract in question, nor did Dashrath assign the contract to plaintiff. Further, defendant argues plaintiff did not produce sufficient evidence to substantiate its assertion that plaintiff was Dashrath's nominee[5] under the con-

---

3. According to plaintiff, the affidavit had been forwarded to Dashrath in India and executed by him on March 6, 2008, but it was not received until four days after the summary-judgment hearing on April 1, 2008.

4. Although both parties acknowledge that a motion for relief from judgment was filed and then denied by the court, we are unable to locate either the motion or an order denying the same in the record, nor does any docket entry reflect the entry of such an order. Accordingly, plaintiff's appeal from the denial of its motion for relief from final judgment is not properly before us.

5. It should be noted that plaintiff did not allege it was Dashrath's assignee which, according to the terms of the agreement, would have required defendant's written approval. Rather, plaintiff alleged it was Dashrath's nominee. While "nominee" is not defined in the contract, a nominee is traditionally "[a] person designated to act in place of another * * * in a very limited way" or "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Black's Law Dictionary 1149 (9th ed. 2009). On the other hand, assignment is the vehicle by which plaintiff

tract, and that such a contract would have had to have been in writing to satisfy the statute of frauds.[6]

 "This Court reviews a trial justice's decision to grant summary judgment on a *de novo* basis." *Credit Union Central Falls v. Groff,* 966 A.2d 1262, 1267 (R.I.2009). "[W]e will affirm a summary judgment 'if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.'" *DiBattista v. State,* 808 A.2d 1081, 1085 (R.I.2002) (quoting *Woodland Manor III Associates v. Keeney,* 713 A.2d 806, 810 (R.I.1998)). A party "opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest" on allegations, denials in the pleadings, conclusions, or legal opinions. *D'Allesandro v. Tarro,* 842 A.2d 1063, 1065 (R.I.2004) (quoting *Santucci v. Citizens Bank of Rhode Island,* 799 A.2d 254, 257 (R.I.2002)). However, "[s]ummary judgment is an extreme remedy that should be applied cautiously." *Johnston v. Poulin,* 844 A.2d 707, 710 (R.I.2004) (quoting *Sjogren v. Metropolitan Property and Casualty Insurance Co.,* 703 A.2d 608, 610 (R.I. 1997)). Thus, "[i]f the affidavit of [a] nonmoving party alleges facts that, if believed, would constitute a valid defense, the affidavit must be taken as true and the motion

denied." *Rotelli v. Catanzaro,* 686 A.2d 91, 93 (R.I.1996).

In granting defendant's motion for summary judgment, the motion justice framed the issue as "whether * * * plaintiff * * * [came] forward with admissible evidence to demonstrate a genuine dispute about its * * * nominee status." Finding no such evidence, she granted the motion. We agree with plaintiff, however, that it did present sufficient evidence to demonstrate outstanding issues of material fact that rendered summary judgment inappropriate.

In opposition to defendant's motion for summary judgment, plaintiff submitted an affidavit executed by one of its members, Arvind Patel (Arvind). Additionally, plaintiff drew attention to the deposition of Demetrios Haseotes, the president and sole shareholder, director, and officer of defendant corporation.

In his affidavit, Arvind stated that plaintiff was Dashrath's nominee under the contract, and affirmed that he and other investors in plaintiff LLC had joined in past commercial enterprises with Dashrath. He stated that they agreed to pool their resources and authorized Dashrath "to act on their behalf in negotiating leases and asset purchase agreements." He further attested that he and the other investors agreed that, subsequent to Dashrath's executing the agreement at issue, "a limited liability company would be formed as nominee of Dashrath * * * and thereby assume all rights and obligations of Dashrath

could have assumed all the rights and obligations of tenancy; assignment is defined in the contract to include "an agreement by any person or entity other than Tenant to directly or indirectly assume the obligations of Tenant * * * or * * * a transfer * * * of Tenant's interest in this Lease." *See id.* at 136.

**6.** The defendant additionally asserts in its brief that Dashrath forfeited any right he may have had to money provided to defendant

because he was convicted of a crime of moral turpitude and was deported. Section 7(c)(8) of the contract states that the landlord may terminate the lease if the tenant is convicted of "any felony involving moral turpitude[.]" However, it became evident at oral argument that there is no evidence that Dashrath had, in fact, been convicted of any crime, nor that he had been deported.

* * * under said lease agreement." Arvind stated that plaintiff LLC was formed around the time construction of the gasoline filling station and convenience store had begun, or was about to begin, in March 2004. He also stated that the described nominee arrangement in this case was consistent with prior dealings between the LLC's investors and Mr. Haseotes.

Arvind further swore in his affidavit that after the LLC was formed there were communications between plaintiff's agents and defendant's agents in which plaintiff asserted its status as Dashrath's nominee, without dispute. He additionally averred that $175,000 had been paid by plaintiff's members under the contract as specifically directed by the principal of defendant. Finally, Arvind maintained that the parties engaged in extensive negotiations to resolve the instant dispute and that no objection was raised to plaintiff's status as tenant during that process.

The plaintiff also submitted to the Court a deposition of Mr. Haseotes, who acknowledged that he received $175,000, which money was to be applied for the purpose of the lease. When shown some of the checks received in payment of the $175,000, he verified they were drawn on accounts in the name of Arvind. Additionally, Mr. Haseotes confirmed that in previous lease agreements with Dashrath, in both Rhode Island and Connecticut, a limited liability company had been formed that eventually became the actual tenant.

■ The assertions contained in Arvind's affidavit must be taken as true for the purposes of summary judgment. *See Rotelli,* 686 A.2d at 93. Further, Mr. Haseotes' deposition testimony supports plaintiff's contention that a nominee arrangement in this transaction would be consistent with the prior course of dealings between the parties. "The purpose of the summary-judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues." *Id.* Further, "[s]ummary judgment is an extreme remedy that should be applied cautiously." *Sjogren,* 703 A.2d at 610. Reviewing the evidence in the light most favorable to plaintiff, we conclude that an issue of material fact exists as to whether plaintiff was Dashrath's nominee, which precluded a grant of summary judgment for defendant.

■ Additionally, defendant claims that plaintiff's "assertion it is the nominee does not comply with the [s]tatute of [f]rauds." G.L. 1956 § 9-1-4. The defendant, however, does not cite any supportive authority, nor does he develop this argument any further. We have held that "[s]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing * * * does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." *Wilkinson v. State Crime Laboratory Com'n,* 788 A.2d 1129, 1132 n. 1 (R.I. 2002). Thus, defendant waived its argument regarding the statute of frauds.

Accordingly, we vacate the judgment entered in favor of defendant.

**B**

**Removal of Attachment**

Although the docket sheet clearly reflects that an order removing the attachment on the defendant's property was entered on April 24, 2008, we are unable to locate such an order in the record. Nevertheless, because we vacate the summary judgment entered in favor of the defendant, we also vacate any order removing the attachment and direct that the Superior Court, on remand, reinstate the writ of attachment.

## III

### Conclusion

For the reasons set forth in this opinion, we vacate both the judgment in favor of the defendant and any order removing attachment by the plaintiff of the defendant's property at 1889 Plainfield Pike in Johnston. We remand the papers in this case to the Superior Court with instructions to reinstate the attachment and to conduct further proceedings consistent herewith.

Justice INDEGLIA took no part in the consideration or decision of this appeal.