**Clare A. PARKER et al.**

v.

**Marsha N. BYRNE et al.**

**No. 2009–162–Appeal.**

Supreme Court of Rhode Island.

June 16, 2010.

vism was before the trial justice.

Thomas More Dickinson, Esq., for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, and
ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

This case arises from the unsuccessful sale of two adjacent pieces of property in North Kingstown, Rhode Island. The plaintiffs, Clare A. Parker and Constance A. Emry, appeal from the Superior Court's grant of summary judgment in favor of the defendants, Marsha N. Byrne and Robin B. Corsi. The plaintiffs contend that summary judgment was improperly granted in favor of the defendants because genuine issues of material fact are in dispute. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### I

### Facts and Procedural History

The plaintiffs, two sisters, owned two parcels of land in North Kingstown, Rhode Island. The plaintiffs owned 44 Church Lane (lot No. 68), which was improved with a single-family home, as tenants in common for approximately two decades. One of the sisters, Ms. Parker, also held title in her name alone to a lot on Fowler Street (lot No. 275). Lot No. 275 abutted lot No. 68 and was landlocked and unimproved.

On June 25, 2005, plaintiffs entered into two purchase-and-sales agreements (the agreements) with defendants for lot Nos. 68 and 275 (collectively the properties).[1]

Ronald M. LaRocca, Esq., Providence, for Plaintiff.

---

1. The agreement for lot No. 275 was signed and dated by Ms. Byrne, Ms. Corsi, and Ms. Parker on June 25, 2005. The agreement for lot No. 68 was signed and dated by Ms. Byrne and Ms. Emry on June 25, 2005, and signed and dated by Ms. Parker on June 26, 2005. The parties, however, assert that both agreements were executed on June 25, 2005.

The agreement for the sale of lot No. 68 was between plaintiffs, Ms. Parker and Ms. Emry, and defendant Ms. Byrne. The agreement for the sale of lot No. 275 was between plaintiff Ms. Parker and defendants, Ms. Byrne and Ms. Corsi. The agreements were contingent upon each other and contained provisions requiring plaintiffs to deliver "good, clear, insurable, and marketable title * * * except easements, restrictions of record and municipal regulations, if any." Both agreements also stated that "all notices * * * shall be in writing." The closing was scheduled for August 23, 2005 at 10 a.m.; and, upon the execution of the agreements, defendants remitted a total deposit of $28,740 to plaintiffs.

Ms. Byrne testified in her deposition that at some point, around the beginning of July 2005, she asked Linda Butcher, plaintiffs' real estate agent, whether another person who had bid on the properties would be interested in being assigned defendants' rights under the agreements. She explained that she was apprehensive about moving to a new place and was having some difficulty adjusting to a recent loss of eyesight. According to Ms. Byrne, Ms. Butcher informed her that the assignment would not be possible because the other bidder had several different contingencies in his or her contract. Ms. Butcher provided a similar account of these conversations in her affidavit and deposition. Ms. Butcher further testified that, after Ms. Byrne asked her to contact the other bidder, Ms. Byrne expressed concern that it would be difficult for her to purchase the properties because she had encountered construction problems with a house she owned in Jamestown.

John McCloskey, defendants' title attorney, requested and received a zoning certificate from the Town of North Kingstown (the town) dated August 5, 2005. The zoning certificate stated that lot Nos. 68 and 275 were "considered combined and [could not] be sold separately." It further stated that the certificate was being supplied in accordance with G.L.1956 § 45–24–54, but that "zoning is a matter of interpretation," and it expressly disclaimed any "guarantee or warrant [of] the accuracy of the information contained" in it.

At some point after receiving the certificate, Mr. McCloskey called Ms. Butcher, made her aware of the certificate, and informed her that it might not be correct but that he would investigate the situation. According to his deposition testimony, the zoning certificate surprised him because it was his understanding that merger generally is based on the common ownership of properties, and these properties were not commonly owned. He stated that he then contacted KarenLu LaPolice, an employee of the town's planning department. Mr. McCloskey reported that Ms. LaPolice informed him that lot No. 275 was the subject of an illegal subdivision in the 1950s or the 1960s, the properties had merged, and the lots could not be sold separately.

Mr. McCloskey, according to his deposition, then spoke to the town solicitor. He stated that the solicitor intimated that the town would require the unmerging of the lots and warned that the town could undertake enforcement. According to Mr. McCloskey, the solicitor essentially said that pursuing the issue further would be opening a "can of worms." He also recounted that, at that time, the solicitor was unwilling to acknowledge that Ms. LaPolice may have been wrong.

After speaking to the solicitor, Mr. McCloskey told Ms. Butcher that defendants did not wish to close on the properties because the town solicitor had taken the position that the properties were merged. Mr. McCloskey told her that he could not resolve the matter himself. Ac-

cording to Ms. Butcher, this communication occurred sometime between August 17 and August 22, 2005.

Mr. McCloskey testified at his deposition that defendants had been willing and anxious to purchase the property once it could be purchased according to the agreements and that defendants had called him repeatedly to ask about rescheduling the closing date. He further stated that he had decided not to schedule a closing in light of the town's position that the lots could not be sold separately, because to do so would have exposed the buyers to the risk of fines and additional expense. "At the very least," he said, "it would have put [Ms. Byrne in] a position to * * * contend with the town as to whether or not there was a violation."

According to Mr. McCloskey, neither plaintiffs nor their real estate agent were provided written notice of the outstanding zoning issues. Ms. Parker, however, acknowledged at her deposition that, prior to the scheduled closing date, she had been made aware of the zoning-certificate issue.

The closing did not occur as scheduled on August 23, 2005. Shortly thereafter, on September 13, 2005, lot No. 68 was sold at a foreclosure auction. Because of the contingent nature of the agreements, Ms. Parker was thus precluded from conveying lot No. 275. All parties now agree that the zoning certificate erroneously represented that the two lots had merged.

On November 14, 2005, plaintiffs filed a complaint against defendants alleging breach of contract, fraud, and tortious interference with contractual and prospective contractual relations. The defendants filed an answer and counterclaimed on January 6, 2006, alleging breach of contract, negligent misrepresentation, and intentional misrepresentation/fraud. The defendants filed a motion for summary judgment on April 18, 2006, which a hearing justice denied on June 20, 2006.

On June 14, 2007, defendants filed a second motion for summary judgment and an alternate motion for partial summary judgment, and, in response, plaintiffs filed a motion in opposition and a cross-motion for summary judgment. On November 28, 2007, an order was entered granting defendants' motion for summary judgment and denying plaintiffs' cross-motion for summary judgment. Subsequently, plaintiffs and defendants agreed to a consent judgment granting summary judgment in favor of defendants on all counts.[2] The plaintiffs filed a timely notice of appeal.

The plaintiffs contend on appeal that the hearing justice erred in granting summary judgment in favor of defendants because issues of material fact remain as to who breached the agreements and whether defendants misrepresented their reason for not performing under the agreements. Further, plaintiffs assert that the hearing justice erred by holding as a matter of law that the properties' titles were unmarketable to a "reasonable buyer." The plain-

**2.** On November 28, 2007, final judgment was entered in favor of defendants on all claims raised in plaintiffs' complaint. However, it appears from the record that plaintiffs filed, and later withdrew, a motion for relief from final judgment. In the consent order, the hearing justice vacated the final judgment, and judgment was entered, under Rule 54(b) of the Superior Court Rules of Civil Procedure, in favor of defendants on all of plaintiffs' claims. Counts 2 and 3 of defendants'

counterclaim, relating to negligent misrepresentation and intentional misrepresentation, were not subject to these initial motions for summary judgment. The plaintiffs do not appeal the denial of their motion for summary judgment concerning their third count, relating to tortious interference with contractual relations. Therefore, plaintiffs' breach-of-contract and fraud claims and defendants' breach-of-contract claim are the only issues remaining on appeal.

tiffs also argue that an issue of fact exists as to whether the zoning certificate rendered the title unmarketable. Furthermore, plaintiffs contend that, because the zoning certificate did not render the title unmarketable, the determination of who breached the contract is a material issue of fact.

The defendants maintain that the hearing justice did not err in granting summary judgment in their favor. The defendants assert that they did not perform under the agreements because first, the zoning certificate led them to believe there was a defect in the titles and then second, the properties became unavailable once lot No. 68 was lost to foreclosure. The defendants specifically assert that plaintiffs had an obligation to deliver good and marketable title and that no reasonable buyer would have closed on the properties, given the circumstances. Furthermore, defendants argue that, because there was no "time-is-of-the-essence" clause in the agreements, the matters could have been resolved, and a new closing could have been arranged within a reasonable time, had the properties not fallen into foreclosure. According to defendants, plaintiffs thus failed to show that they were ready, willing, and able to perform within a reasonable time after the scheduled closing date.

## II

## Standard of Review

It is well settled that this Court reviews a hearing justice's grant of summary judgment *de novo.* *Credit Union Central Falls v. Groff,* 966 A.2d 1262, 1267 (R.I.2009). Such a decision will be upheld only if "after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Lucier v. Impact Recreation, Ltd.,* 864 A.2d 635, 638 (R.I.2005)). "Moreover, the party opposing a summary-judgment motion 'has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.' " *Id.*

## III

## Discussion

## A

## Breach of Contract

Generally, whether a party materially breached his or her contractual duties is a question of fact. *Women's Development Corp. v. City of Central Falls,* 764 A.2d 151, 158 (R.I.2001). If the issue of material breach, however, "admits of only one reasonable answer, then the court should intervene and resolve the matter as a question of law." *Id.* The particular sequence of events in the case at bar admits of only one reasonable disposition, and thus we proceed to resolve the breach-of-contract question as a matter of law.

The unchallenged facts derived from the affidavits, depositions, and supporting documentation in the record establish that plaintiffs breached the agreements. After entering into agreements for the purchase of the two properties, defendants received a zoning certificate from the town, later determined to be erroneous, stating that the two properties had merged and could not be sold separately. The defendants' agent provided oral notice, but not written notice, to plaintiffs' agent about the purported merger of the properties, and this information subsequently was relayed to plaintiffs. The defendants demonstrated concern over the certificate and sought an explanation and resolution from the town

planning department and the town solicitor. At some time thereafter, but before the scheduled closing date, defendants' agent informed plaintiffs' agent that he had reached an impasse, that he could not resolve the matter himself, and that defendants did not wish to close until the question of whether the two lots could be sold separately was resolved. The plaintiffs, however, did not take any action to resolve the matter. The closing date came and went, and approximately three weeks after the scheduled closing, one of the lots was sold at a foreclosure auction, thereby making performance of both agreements impossible.

It is undisputed that, under the two mutually contingent agreements, plaintiffs had a contractual duty to convey *two* marketable titles to defendants. We are of the opinion that plaintiffs breached the agreements by failing to present two marketable titles to defendants within a reasonable time after the scheduled closing date, thereby excusing defendants from performance under the agreements. *See Women's Development Corp.*, 764 A.2d at 158 ("A party's material breach of contract justifies the nonbreaching party's subsequent nonperformance of its contractual obligations.").

■ The zoning certificate was issued pursuant to § 45–24–54, which provides that, "[i]n order to provide guidance or clarification, the zoning enforcement officer or agency shall, upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request." As the statute and common experience suggest, it is customary practice for buyers to obtain such zoning certificates to gain clarification and guidance concerning the properties they wish to purchase. We recognize that a zoning certificate is not legally binding. In the case at bar, however, we are satisfied that the certificate, albeit erroneous, stating that the lots could not be sold separately, coupled with the town solicitor's warning that the town could take enforcement action, raised sufficient concerns to warrant a postponement of the closing for a reasonable period to enable plaintiffs to provide defendants with reasonable assurances that the properties were, in fact, two distinct parcels.

Within a mere three weeks after the scheduled closing date, however, one of the lots was sold at a foreclosure sale; and, as a result, plaintiffs could no longer perform under the agreements. Thus, as defendants aptly noted, the unchallenged facts reflect that the two titles purportedly were unavailable prior to the foreclosure sale and, once the foreclosure sale took place, plaintiffs could no longer convey the properties. Therefore, defendants never had the opportunity to close on the two properties for which they originally had bargained.

■ Significantly, neither of the agreements contained a time-is-of-the-essence clause. It is well settled that generally, "contract provisions relating to time do not by their mere presence in an agreement make time of the essence thereof so that a breach of the time element will excuse nonperformance." *Lajayi v. Fafiyebi*, 860 A.2d 680, 688 (R.I.2004) (quoting *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 114, 265 A.2d 429, 435 (1970)). Therefore, parties to a contract for the sale of property have a reasonable amount of time after the scheduled closing date within which to complete the closing. *1800 Smith Street Associates, LP v. Gencarelli*, 888 A.2d 46, 53 (R.I.2005). In the case at bar, it is clear that, but for the foreclosure, plaintiffs and defendants could have resolved the zoning certificate issue

within a reasonable time after the scheduled closing date.

The plaintiffs did not take the opportunity to resolve the matter, but instead allowed lot No. 68 to fall into foreclosure. Specifically, there is no suggestion in the record that they took any affirmative action to resolve the confusion stemming from the zoning certificate, to delay the foreclosure sale, or to inform plaintiffs' own agent or defendants that the properties were at risk of foreclosure.

Moreover, we are satisfied that providing the sellers with oral notice rather than written notice was not a material breach. Both plaintiffs' agent, Ms. Butcher, and one of the plaintiffs herself were aware of defendants' concern over the zoning certificate. The plaintiffs were not prejudiced by defendants' failure to provide written notice because oral notice was sufficient to enable them to pursue resolution of the zoning certificate issue. *See* 17A Am.Jur.2d *Contracts* § 557 at 527 (2004) (noting that "[e]very breach of contract does not give a party the right to unilaterally terminate the contract, as long as the breaching party has substantially performed its duties under the contract").

We take this opportunity to emphasize that the specific sequence and nature of the events in this case are central to our holding. But for any one of the undisputed facts and but for the timing of the events, especially the eventual foreclosure of the properties, this case may have lent itself to another disposition. For the reasons set forth in this section, we affirm summary judgment in favor of defendants with respect to the breach-of-contract claim.

**3.** The plaintiffs identify this claim as "misrepresentation" on appeal. However, we will treat it as a fraud claim, as it appears in their

## B

### Fraud[3]

The plaintiffs also argue that defendants perpetrated fraud by terminating the agreements for "pretextual" reasons that were "in stark contrast to [defendants'] duty" to proceed in good faith. The plaintiffs allege that defendants used the zoning certificate as pretext for their failure to close on the properties, and that, in reality, defendants did not close because Ms. Byrne had encountered problems with her Jamestown property and was experiencing a loss of eyesight. This argument is wholly unavailing.

[11] To establish a *prima facie* fraud claim, "the plaintiff must prove that the defendant made a false representation intending thereby to induce plaintiff to rely thereon and that the plaintiff justifiably relied thereon to his or her damage." *Bitting v. Gray,* 897 A.2d 25, 34 (R.I.2006) (quoting *Bogosian v. Bederman,* 823 A.2d 1117, 1120 (R.I.2003)) (internal quotation marks omitted). Therefore, in this case, for the plaintiffs to establish a *prima facie* fraud claim, they needed to prove, among other facts, that *at the time defendants entered into the agreements* the defendants falsely represented that they wished to purchase the properties. The plaintiffs, however, offered no evidence that the defendants entered into the agreements with the intent to breach. Rather, the plaintiffs alleged that the defendants decided *after* entering into the contract that they would rather not purchase the properties because of unforeseen construction problems with the home in Jamestown and Ms. Byrne's apprehension surrounding the move to Rhode Island. Therefore, we affirm sum-

complaint. They have used these terms interchangeably throughout the proceedings.

mary judgment in favor of the defendants with respect to the fraud claim as well.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the summary judgment of the Superior Court and remand the record of the case to it.

Justice INDEGLIA took no part in the consideration or decision of this appeal.