The SHELTER HARBOR
CONSERVATION
SOCIETY, INC.

v.

Charles A. ROGERS et al.

No. 2010–16–Appeal.

Supreme Court of Rhode Island.

June 17, 2011.

---

Adam M. Ramos, Esq., Providence, for Plaintiff.

Robert G. Flanders, Jr., Esq., Providence, for Defendant Rogers.

Michelle A. Buck, Esq., for Defendant Town of Westerly.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The plaintiff, The Shelter Harbor Conservation Society, Inc. (the Society or

plaintiff), appeals from a Superior Court judgment granting Charles A. and Nancy L. Rogers's (the Rogerses or defendants) motion for summary judgment. The Society argues that a genuine issue of material fact exists about whether the defendants' lots had merged under the zoning ordinance of Westerly, Rhode Island. Specifically, the plaintiff contends that the evidence contained divergent interpretations of the map depicting the Rogerses' lots, and the trial justice therefore improperly weighed the evidence at the summary-judgment stage when she granted the motion consistently with one of these interpretations in concluding that the lots had not merged into one. The Society maintains that a trial on the merits is necessary to resolve this issue. Additionally, the plaintiff argues that the trial justice erred when she stayed its attempts to obtain discovery from the Rogerses and their attorney. This case came before the Supreme Court for oral argument on March 29, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Subsequent to our consideration of the parties' submitted memoranda and oral arguments, we are satisfied that cause has not been shown, and we proceed to decide the appeal at this time. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The defendants, who are married, are the owners of certain property in Wester-

ly, Rhode Island (Westerly or the town). Specifically, they own the property designated as assessor's plat No. 135, lot Nos. 66, 66–A, and 66–B. The lots in question are contiguous and are located on Wagner Road. The Society, a Rhode Island corporation, owns property in the same subdivision.

These lots are reflected on a map entitled "Map of Bungalow Sites called Musicolony Property of Dr. Franklin D. Lawson, in the Town of Westerly, Rhode Island" (map).[1] This map was recorded in the Westerly land evidence records in 1912. The map shows lot Nos. 66, 66–A, and 66–B enclosed by solid lines and each labeled with four numbers inside these solid lines. Lot No. 66 contains the numbers 1, 2, 3, and 4; lot No. 66–A contains the numbers 5, 6, 7, and 8; and lot No. 66–B contains the numbers 9, 10, 11, and 12.

On or about June 1, 1984, the Rogers Profit Sharing Plan (the plan) acquired these lots. On June 20, 1985, the plan transferred lots 5, 6, 7, and 9 comprising lot No. 66–A to defendants as tenants by the entirety.[2] On January 31, 2002, the plan transferred lots 1, 2, 3, 4, 9, 10, 11, and 12, representing lot Nos. 66 and 66–B, to the Rogerses as tenants by the entirety. On March 27, 2003, corrective warranty deeds were recorded to reflect that lot No. 66 was transferred to Charles A. Rogers and lot No. 66–B to Nancy L. Rogers, rather than to the pair as tenants by the entirety.

Lot Nos. 66, 66–A, and 66–B each total 10,000 square feet and are undeveloped.

---

1. With the map title and street names like Wagner, Bach, and Donizetti, one can assume that the developer had an inclination toward classical music.

2. Lot 9 was transferred in error, and on August 25, 1986, a corrective warranty deed was recorded to reflect that lot 8 was intended to be transferred instead.

On September 26, 2003, the Rogerses submitted three requests to the town for zoning certificates designating lot Nos. 66, 66–A, and 66–B as building lots for single-family residences. The town zoning official issued the certificates on that same day.

On August 8, 2007, the Society filed a complaint for declaratory judgment and injunctive relief against the Rogerses and the town zoning official, building official, and finance director. The plaintiff alleged that the twelve individual lots merged under the Town of Westerly Zoning Ordinance when the lots came under common ownership either in 1984 when the plan acquired the property or in 2002 when lot Nos. 66 and 66–B were transferred to the Rogerses as tenants by the entirety.[3] Once that occurred, plaintiff claims, the lots became one 30,000–square–foot lot that could not later be divided without the procurement of further relief, such as planning-board approval and a dimensional variance from the zoning board. Therefore, the Society alleged that the corrective warranty deeds and the zoning certificates were null and void because they were issued after the merger and in violation of Westerly's subdivision regulations. Accordingly, plaintiff sought a declaration that the issued zoning certificates were invalid, that the property merged into one 30,000–square–foot lot, that the zoning official's approval of the certificates was void, and that the property could not be subdivided without the appropriate approval and zoning relief. Further, the Society requested that the Superior Court restrain the Rogerses from selling the lots while the litigation was pending and to restrain the building official from issuing building permits for the three lots.

In response, defendants, pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, filed a motion to dismiss plaintiff's complaint on October 2, 2007, on the grounds that the Society lacked standing to enforce Westerly's zoning ordinance, specifically, its merger provision, and that the complaint did not demonstrate that plaintiff had been injured in fact. In response, the Society argued that it was entitled to relief because the lots had merged by operation of law, and the Rogerses' failure to pursue the proper zoning and subdivision procedures "denied it of its right to notice and an opportunity to be heard." The motion was heard before a trial justice of the Superior Court on January 22, 2008, and an order granting the motion was entered on January 24, 2008. A final judgment was entered that same day from which plaintiff promptly filed a notice of appeal.

The case was then mediated in this Court while the appeal was pending and

---

3. The plaintiff cites to § 260–32E.(2) of Article VII of the Town of Westerly Zoning Ordinance (merger provision), which provides in pertinent part:

"If two or more undeveloped contiguous lots of record are in single ownership at the time of adoption or amendment of this Zoning Ordinance, or at any time thereafter, and if all or part of the lots do not meet the minimum lot size or frontage requirement of this Zoning Ordinance, the lands involved shall be considered to be a single parcel for the purposes of this Zoning Ordinance, and no portion of said parcel shall be built upon which does not meet the minimum lot size and frontage requirements of this Zoning Ordinance; nor shall any division of the parcel be made which creates any dimension or area less than the requirements of this Zoning Ordinance."

The plaintiff explains that "[i]t is unclear when, precisely, the [m]erger [o]rdinance was enacted." However, the Society maintains that the practical effect of the merger ordinance was identical whether it was enacted before the 1985 transfer of lot No. 66–A from the Plan to the Rogerses or after because, either way, the lots merged into one 30,000–square–foot lot.

was resolved by agreement of the Rogerses to "waive any defense they might otherwise have to the claims * * * on the grounds that the plaintiff lacks standing or that the claims are not ripe for adjudication."[4] Accordingly, an order from this Court was filed on October 23, 2008, vacating the judgment that dismissed the complaint. The "case [was] remanded to Washington County Superior Court for a determination on the merits of the parties' claims and defenses in that action."

In their answer, filed on December 10, 2008, and in their subsequent motion for summary judgment, filed on February 6, 2009, the Rogerses denied plaintiff's allegation that the lots had merged into one 30,000–square–foot lot. Rather, they asserted that lot Nos. 66, 66–A, and 66–B "constitute three buildable residential lots," and the zoning certificates properly were issued. The Rogerses asserted as affirmative defenses that plaintiff's claims were barred because the merger provision of Westerly's zoning ordinance was not enacted until after the lots were transferred in 1984 and does not apply retroactively; that plaintiff's claims were barred because the lots met "the minimum dimensional and area requirements of the least restrictive zoning district" and therefore were excepted from the merger provision;[5] and that plaintiff's claims were barred because the transfer of lot Nos. 66 and 66–B to the Rogerses as tenants by the entirety was an error as the result of a mutual mistake that was "rectified by filing corrective deeds." Therefore, they brought a counterclaim against the Society

and a third-party complaint against the town for a declaratory judgment dismissing the Society's claims, declaring that lot Nos. 66, 66–A, and 66–B did not merge into one lot, and declaring that the Rogerses may seek and obtain building permits to construct one single-family residence on each of these lots. In an answer to the counterclaim, the Society argued in its defense that the Rogerses had no right to obtain building permits, that the doctrine of mutual mistake was unavailable to the Rogerses against the Society as a third party, and that the corrective deeds were of no avail because they could not alter the grantees nor "the date of transfer."

The plaintiff moved to deny or continue defendants' motion for summary judgment on March 6, 2009, "because the parties have not yet engaged in discovery sufficient to enable [the Society] to present by affidavit, deposition or interrogatory answers facts essential for * * * opposition to the [m]otion." The Society requested a continuance under Rule 56(f) of the Superior Court Rules of Civil Procedure to afford plaintiff the opportunity to depose the Rogerses and their attorney, as well as certain town officials "[a]s to the defenses raised by the Rogers[es]." On March 11, 2009, plaintiff sent deposition notices to defendants and their attorney. In response, defendants moved for a protective order canceling the deposition notices.

Before deciding these pending motions, the trial justice first undertook to determine whether the merger provision applied to the lots in question. She stayed the

---

4. Although we are not convinced that questions of justiciability, including standing and ripeness, are proper subjects for waiver by the parties, that question is not before us.

5. The defendants cite to § 260–32E.(2) of the Town of Westerly Zoning Ordinance, which provides that the merger provision of the zoning ordinance "shall not apply to lots within

an approved subdivision which meet the minimum dimensional and area requirements of the least restrictive zoning district under this chapter." The least-restrictive zoning district under the zoning ordinance is HDR–6 (High Density Residential), which requires a minimum lot size of 6,000 square feet.

notices of deposition sent by plaintiff to the Rogerses and their attorney. However, plaintiff was permitted to obtain discovery from the town about the applicability of the merger provision.

Accordingly, plaintiff deposed Elizabeth Rasmussen, the town zoning official, and Marilyn Shellman, the town planning official, "regarding factual questions that inform the answer to the question of whether the [m]erger [o]rdinance applies to [lot Nos. 66, 66–A, and 66–B]." Ms. Rasmussen agreed with "the position that the subject property consists of three 10,000 square foot lots regardless of the individual numerations 1 through 12 on them" because they were "protected from the [m]erger [p]rovision." Ms. Shellman also agreed that the lots are three separate discrete 10,000–square–foot lots, and she was not aware of any merger of the lots.

However, in its brief to the Superior Court arguing that the property had merged, plaintiff maintained the "[m]ap * * * [spoke] for itself." It argued that Ms. Rasmussen did not consider key elements of the map in her analysis including its notation that lots were 25' × 100' "unless otherwise designated" and pointed out that she could not explain discrepancies in the map, which she described as without "rhyme or reason." Therefore, plaintiff urged the trial justice to conclude that the merger provision was applicable and caused the twelve lots to merge into a single lot as a matter of law when they came under common ownership because, as 2,500–square–foot lots, they did not meet the least-restrictive lot size required by the zoning ordinance.

For its part, defendants argued in response to plaintiff's argument that the property "[a]t all times * * * comprised three separate, discrete 10,000 square foot lots within the subdivision." They argued that this assertion amply was supported by the consistent interpretation of the map to this effect by the town, owners of other property depicted on the plat map, prior owners of this specific property, the town planning official, and the current and former town zoning officials. The defendants submitted that the contrary interpretation was held only by plaintiff. They requested the trial justice to hold that the property fell within the exception to the merger ordinance, and consequently, also to grant their motion for summary judgment "because there [were] no factual disputes and * * * the issue before the [c]ourt [was] simply a matter of legal interpretation."

On September 21, 2009, the matter came before the trial justice to address the applicability of the zoning ordinance's merger provision. After hearing the arguments of the parties, the trial justice held that "the lots remain 10,000 square foot lots and remain unmerged pursuant to [the] exception" to the merger provision. Accordingly, the trial justice held that no genuine issues of material fact existed and defendants were entitled to summary judgment as a matter of law because the three lots "comprise lots within an approved subdivision and each lot meets the minimum dimensional and area requirements of the least restrictive zoning district." A final judgment granting summary judgment in favor of defendants on all counts was entered on October 2, 2009. The plaintiff filed a timely notice of appeal.

## II

### Issues on Appeal

The plaintiff presents two issues on appeal. First, plaintiff argues that the trial justice erred when she "resolved a disputed issue of material fact and concluded that [the map] depicted the property owned by the Rogers[es] as three (3) separate 10,000 square foot lots instead of

twelve (12) 2,500 square foot lots." Second, plaintiff contends that the trial justice erred when she prevented plaintiff from taking discovery from the Rogerses. The defendants maintain that no genuine issues of material fact existed and that they were entitled to summary judgment as a matter of law because the map unambiguously designated the property as three 10,000–square–foot lots that were exempt from the merger provision of the zoning ordinance. Additionally, they argue that the trial justice acted within her discretion when she prevented plaintiff from deposing the Rogerses and their attorney pending her ruling on whether the lots had merged. The town, as a third-party defendant, also takes the position that lot Nos. 66, 66–A, and 66–B are exempt from the merger provision and "are separate and discrete 10,000 square foot lots."

### III

### Standard of Review

■ "It is well settled that this Court reviews a hearing justice's grant of summary judgment *de novo.*" *Parker v. Byrne,* 996 A.2d 627, 632 (R.I.2010) (citing *Credit Union Central Falls v. Groff,* 966 A.2d 1262, 1267 (R.I.2009)). "Accordingly, if our review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and if we conclude that the moving party was entitled to judgment as a matter of law, we shall sustain the trial justice's granting of summary judgment." *Weaver v. American Power Conversion Corp.,* 863 A.2d 193, 197 (R.I.2004) (quoting *Johnson v. Newport County Chapter for Retarded Citizens, Inc.,* 799 A.2d 289, 291 (R.I.2002)). However, "if the record evinces a genuine issue of material fact, summary judgment is improper and we will accordingly reverse." *Canavan v. Lovett, Schefrin and Harnett,* 862 A.2d 778, 783 (R.I.2004) (citing *Belanger v. Silva,* 114 R.I. 266, 267–68, 331 A.2d 403, 405 (1975)). Conversely, "[i]n reviewing the motion justice's stay of discovery, we apply a deferential abuse-of-discretion standard." *Giuliano v. Pastina,* 793 A.2d 1035, 1037 (R.I.2002) (quoting *Martin v. Howard,* 784 A.2d 291, 297 (R.I.2001)). This is so because "[t]he Superior Court has broad discretion to regulate how and when discovery occurs." *Id.* (quoting *Martin,* 784 A.2d at 296).

### IV

### Discussion

### A

### Summary Judgment

■ First, we must consider whether defendants were entitled to summary judgment on the issue of whether the subject property had merged into one 30,000–square–foot lot. The plaintiff argues before this Court that the evidence on the proper interpretation of the map was "conflicting." Specifically, it maintains that "[t]he competing testimony of Ms. Shellman and Ms. Rasmussen clearly indicates that there are multiple plausible interpretations of how the map should be read." Therefore, plaintiff argues that this disputed fact precluded entry of summary judgment and requests that this Court vacate the judgment of the Superior Court and remand for a trial on the merits.

■ The trial justice did not find that the map was ambiguous. Therefore, she interpreted the map solely through reviewing the document itself and held, as a matter of law, that the lots were 10,000–square–foot lots that "remain[ed] unmerged" under § 260–32E.(2) of the town's zoning ordinance because they "comprise lots within an approved subdivision and each such lot meets the minimum dimen-

sional and area requirements of the least restrictive zoning district." "In the absence of a finding that the recorded plat is ambiguous, we know of no authority that permits a trial justice to go beyond the plat and entertain parol or extrinsic evidence to vary the terms of a writing." *Newport Realty, Inc. v. Lynch,* 878 A.2d 1021, 1034 (R.I.2005). Therefore, upon our *de novo* review, we perceive no error in the trial justice's determination. *See id.* at 1042 (citing *Robidoux v. Pelletier,* 120 R.I. 425, 434, 391 A.2d 1150, 1155 (1978)).

The map shows the subject property as three squares bounded by solid lines. *See Hall v. Nascimento,* 594 A.2d 874, 876 (R.I.1991) (describing the western boundary of a lot depicted on a plat map as a "solid and separate line[ ]"). Although the numbers one through twelve are inscribed inside the lots diagonally from their upper left-hand corners to the lower right-hand corners, the property is not further delineated with solid lines, as are other lots contained in the map. Elsewhere on the map, similarly sized squares containing up to four numbers are depicted. Some of these squares appear identically to the subject property with four numbers inscribed therein. Others are bisected with one solid line width-wise into two portions each containing two numbers. Significantly, the majority of the square lots on Donizetti Road, which runs parallel to Wagner Road, are intersected with three horizontal, solid lines dividing the squares into narrow quadrants containing just one number.

After reviewing these clear boundaries, we agree with the trial justice that, as a matter of law, the map unambiguously depicts the subject property as three lots, not twelve. If the drafter of this map in 1912 intended to carve out twelve lots rather than three, he could have done so by separating the three lots into smaller portions with additional solid lines as was accomplished on the lots along Donizetti Road. The subject lots, then, were created as three 10,000–square–foot lots and have been exempt from merger because they exceed the area requirement of the least restrictive zoning district, regardless of whether the lots ever were in common ownership. Therefore, the trial justice did not err when she granted summary judgment in favor of defendants on the basis of the map alone. *See Newport Realty, Inc.,* 878 A.2d at 1042.

■ Furthermore, we do not agree with plaintiff's characterization of the record as evincing a genuine issue of material fact as to the proper interpretation of the map. After careful examination, it is our view that the deposition testimony of Ms. Shellman and Ms. Rasmussen was not "competing," as plaintiff suggests. Both agreed that the map depicted three separate discrete 10,000–square–foot lots that had not merged. This interpretation's consistency with the taxation of the property and treatment of similar lots in the subdivision as three 10,000–square–foot lots is persuasive. Consequently, though cognizant that "[s]ummary judgment is an extreme remedy that should be applied cautiously," we hold that both the map itself and the record do not reveal a genuine issue of material fact and defendants were entitled to summary judgment as a matter of law. *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.,* 994 A.2d 54, 57 (R.I.2010) (quoting *Johnston v. Poulin,* 844 A.2d 707, 710 (R.I.2004)); *see Shappy v. Downcity Capital Partners, Ltd.,* 973 A.2d 40, 45 (R.I.2009) (affirming grant of summary judgment and noting that "where the facts suggest only one reasonable inference, the trial justice may properly treat the question as a matter of law") (quoting *Kennedy v. Providence*

*Hockey Club, Inc.,* 119 R.I. 70, 77, 376 A.2d 329, 333 (1977)).

## B

### Discovery

■ The plaintiff also submits that the trial justice's order staying the deposition notices sent by plaintiff to the Rogerses and their attorney "constitutes reversible error." It argues that although "it is not clear what information might have been discovered," defendants' rationale for filing corrective deeds was relevant to the applicability of the merger provision. However, the trial justice "ha[d] broad discretion to regulate how and when discovery occur[red]" and used this discretion when she stayed the notices of deposition. *Giuliano,* 793 A.2d at 1037 (quoting *Martin,* 784 A.2d at 296). In our view, this was not an abuse of the trial justice's discretion because the depositions of the Rogerses and their attorney were not intended to obtain information relevant to the issue then under consideration.

According to an affidavit attested to by the Society's president, the discovery sought was aimed at obtaining "information that is essential to the opposition of the portion of the Motion for Summary Judgment regarding mutual mistake and recordation of deeds and corrective deeds," rather than the issue of merger. The portion of the motion for summary judgment submitting that the lots never came into common ownership raised the defense of mutual mistake. The second portion of the motion argued that the property was exempt from the merger provision because the property consisted of "three separate and distinct lots" that exceed the area requirement of the least restrictive zoning district. As the trial justice examined this potentially dispositive issue first, she logically stayed the depositions intended to elicit information about defenses for which

the necessity of addressing was contingent on the resolution of the preliminary issue. We are satisfied that the trial justice did not abuse her discretion when she stayed the depositions that were, by the plaintiff's own representation, intended to gather information relating to the first portion of the motion arguing that the lots never entered common ownership and raising the defense of mutual mistake.

## V

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The papers may be remanded to that court.

ROBINSON, J., dissenting.

After no small amount of reflection, I have concluded that I must dissent from the Court's affirmance of the grant of summary judgment in this case. I readily acknowledge the impressive and almost persuasive review of the facts and the law that is so lucidly set forth in the Court's opinion. At the end of the day, however, my understanding of the strictures of Rule 56 of the Superior Court Rules of Civil Procedure and the opinions of this Court with respect to same has caused me to conclude that the grant of summary judgment in favor of the defendants was inappropriate. *See Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.,* 994 A.2d 54 (R.I.2010); *Estate of Giuliano v. Giuliano,* 949 A.2d 386 (R.I.2008).

The majority, in conducting its *de novo* review of the hearing justice's grant of summary judgment considers the map at issue to be unambiguous. I reach the opposite conclusion.

This Court has often stated that summary judgment is a "drastic remedy." *Ardente v. Horan*, 117 R.I. 254, 256–57, 366 A.2d 162, 164 (1976); *see also Estate of Giuliano*, 949 A.2d at 390. As a corollary to that proposition, this Court has said that summary judgment should be "cautiously" applied. *See, e.g., DePasquale v. Venus Pizza, Inc.*, 727 A.2d 683, 685 (R.I. 1999) ("This Court has consistently acknowledged that summary judgment is a harsh remedy that must be applied cautiously."); *Sjogren v. Metropolitan Property and Casualty Insurance Co.*, 703 A.2d 608, 610 (R.I.1997); *see also Estate of Giuliano*, 949 A.2d at 390–91. I am further mindful of the principle that "summary judgment should occasion the termination of a case *only where it is absolutely clear* that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Estate of Giuliano*, 949 A.2d at 394 (emphasis added) (internal quotation marks omitted).

In my judgment, in situations where there is something akin to a tie as to whether or not to grant Rule 56 relief, the tie should go to the runner—the runner being the venerable right to a trial on the merits. *See Industrial National Bank v. Peloso*, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979) ("The purpose of the summary judgment procedure is issue finding, not issue determination."); *see also Estate of Giuliano*, 949 A.2d at 390–91; *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 581, 410 A.2d 986, 992 (1980).

Whether a map is or is not ambiguous constitutes an issue of law to be determined in the first instance by the *nisi prius* court.[6] *See Gliottone v. Ethier*, 870 A.2d 1022, 1028 (R.I.2005) (involving photographs); *see also Beacon Mutual Insurance Co. v. Spino Brothers, Inc.*, 11 A.3d 645, 648 (R.I.2011); *Gorman v. Gorman*, 883 A.2d 732, 738 n. 8 (R.I.2005). As such, that initial determination "is freely reviewable by this Court." *Gorman*, 883 A.2d at 738 n. 8.[7]

What differentiates this case from so many other cases involving a map which can readily be classified as unambiguous is the undisputed fact that the map at issue in this case bears the following explicit and intriguing statement: **"Note—All lot numbers indicate lots 25' × 100' unless otherwise designated."** (Emphasis added.) I am convinced that the map is ambiguous and that, therefore, it was an inappropriate subject for disposition by summary judgment.

I of course have no idea what an expert witness (or other witness) might make of the above-quoted "Note" that appears on the map. Indeed, at a trial on the merits, there might well be a battle of experts. My attitude is: so be it! It is my view that a trial on the merits constitutes the way in which the meaning of this rather unusual map (with its enigmatic Note and peculiar hash marks) should be arrived at. To my mind, the meaning of the map at issue is fog-enshrouded, and that fog should be dissipated by a trial on the merits and not by the drastic remedy of summary judgment. *See Robidoux v. Pelletier*, 120 R.I. 425, 434, 391 A.2d 1150, 1155 (1978) ("Very often lines and figures

---

**6.** In my judgment, a map such as the one at issue in this case is no different from any other declarative document for purposes of the ambiguity *vel non* analysis.

**7.** Of course, if a map is determined to be ambiguous, the eventual resolution of that ambiguity by the finder of fact would be reviewed on appeal under the clearly erroneous standard. *Farrell v. Meadowbrook Corp.*, 111 R.I. 747, 750, 306 A.2d 806, 808 (1973); *see also Dubis v. East Greenwich Fire District*, 754 A.2d 98, 100 (R.I.2000).

drawn on a land-development plat may be unclear as to their intended purpose. When such a case arises, *it is the task of the factfinder* to interpret the meaning of the disputed item by careful scrutiny of all lines, figures, and letters that appear on the map as well as whatever pertinent evidence may be adduced by the litigants.") (emphasis added). What was said of the plat at issue in *Farrell v. Meadowbrook Corp.,* 111 R.I. 747, 749, 306 A.2d 806, 807 (1973), can be applied to the problem that the map at issue in this case poses: "Recorded plats are writings that come within the interdictions of the parol evidence rule. However, the rule presupposes a clearly written unambiguous document." (Citation omitted.)

It certainly is not my place to indicate how a case like this should have been litigated if it had gone to trial. Nor is it my place to speculate as to which party would have had the better chance of prevailing if there had been a trial. *See Estate of Giuliano,* 949 A.2d at 394 n. 9. I only know that my understanding of Rule 56 has convinced me that summary judgment should not have been granted and that there should have been an actual trial. Having said that, I simply record my very respectful dissent.