DECISION
Before the Court are consolidated appeals brought by Appellants Redwood Realty II, LLC ("Redwood") and North American Processing, LLC, formerly known as New England Dispose, LLC (collectively, "Appellants"), of decisions by the Town of Cumberland Zoning Board, acting as the Board of Review and the Board of Appeals[1] ("Zoning Board" or "Board"). The Zoning Board rendered four decisions at a *Page 2 
hearing on December 17, 2007, denying Appellants' appeals of (1) the Building Official's revocation of a zoning certificate for a construction and demolition processing facility; (2) the Building Official's denial of a zoning certificate for a construction and demolition processing facility; (3) the Building Official's denial of a zoning certificate for a wood processing facility; and (4) the Planning Board's denial of the proffered Development Plan Review application. On February 11, 2008, the Zoning Board issued three written decisions which memorialized and recapitulated the findings and conclusions regarding each appeal.[2] Before this Court, Appellants challenge the propriety of each of the Zoning Board's determinations. Although these appeals implicate separate decisions of the Zoning Board, each involves the same parties, the same property, and overlapping legal issues. Accordingly, in the interest of judicial economy, this Court consolidated these appeals on December 18, 2009. For the reasons set forth herein, the Court reverses the Zoning Board's decisions.
 I FACTS AND TRAVEL[3]
Redwood is the record owner of real property located on 32 Martin Street in Cumberland, Rhode Island ("Property"). The Property, designated as Assessor's Plat 34, Lot 236, consists of approximately fourteen acres of land and is located within a light industrial (I-1) zoning district. *Page 3 
In January 2006, Mr. Peter Calcagni, as owner of Redwood, entered into a partnership with various individuals, initially known as New England Dispose, LLC, and later renamed North American Processing, LLC, for the development of a construction and demolition processing facility ("C D Facility") on the Property. Shortly thereafter, Appellants engaged counsel to commence the permitting process for the proposed C D Facility.
 A Issuance of the Zoning Certificate
On March 13, 2006, counsel for Appellants submitted a request to the Town of Cumberland Building Official, [4] Mark Favreau, for a zoning certificate for the proposed C D Facility. (Re: Request for Certificate of Zoning Compliance, Mar. 13, 2006.) With regard to the operational plans for the C D Facility, Appellants' zoning certificate request set forth that:
 "The proposed facility will be used to reprocess and remanufacture construction and demolition materials (hereinafter, `C D'). All C D materials reprocessing and remanufacturing will take place inside the building. It will then be separated and stored in roll-offs until loaded onto and removed by rail car on a weekly basis. Importantly, all operations including dumping, separating and loading onto the rail, will take place entirely within the proposed structure, which will be approximately Sixty Thousand (60,000) square feet." Id. *Page 4 
By way of the zoning certificate, Appellants sought to obtain a determination that a C D Facility qualified as "[w]holesale [t]rade, within enclosed structure,"[5] as set forth in the Cumberland Zoning Ordinance ("Zoning Code"), and thus, was a permitted use for the light industrial (I-1) zoning district where the Property was located. Id.
On March 20, 2006, following a review of the preliminary plans for the proposed C D Facility with Appellants, and consultation with the Town Planner, Mr. Favreau issued a response to the zoning certificate request. (Favreau, Oct. 16, 2007, Tr. at 110-18.) Therein, Mr. Favreau stated that:
 "Pursuant to the Zoning Code and Comprehensive Plan[,] it is my determination that your proposal is in compliance with the Zoning Code, as it constitutes a "Wholesale Trade within an enclosed structure" pursuant to the Industrial (I-1) Zoning District and Appendix A Section 5.0 (51) of the Code." (Zoning Certificate, Mar. 20, 2006.)
Accordingly, Mr. Favreau concluded that the proposed C D Facility was "allowed by right" on the Property. Id.
Shortly thereafter, Appellants submitted a preliminary Design Plan Review application for the C D Facility to the Town of Cumberland Planning Board ("Planning Board"). (Design Plan Review Submission, Apr. 2006.) This application was certified *Page 5 
complete on May 2, 2006. (Planning Department Certificate of Completeness, May 2, 2006.) When the Planning Board did not commence a hearing on this application within sixty-five days from the certification of completeness, Appellants wrote to the Planning Director and contended that the Planning Board's failure to act constituted an approval by operation of law pursuant to Section 5(F) of the Cumberland Land Development and Subdivision Regulations. (Re: Proposed Martin Street Processing Facility, July 12, 2006.) In this notice, mailed July 12, 2006, Appellants maintained that the sixty-five day period in which to hold a hearing had expired on July 7, 2006, and consequently, they intended to seek a Final Plan review before the Planning Board. Id.
On July 28, 2006, before Appellants submitted a Final Plan, two Cumberland residents — Walter and Renee Ducharme ("Ducharmes") — filed an appeal to the Zoning Board, challenging Mr. Favreau's issuance of the zoning certificate for the proposed C D Facility. Later, on September 14, 2006, two additional Cumberland residents — Harold and Delores Audette ("Audettes") — filed a separate appeal, likewise challenging the issuance of the zoning certificate. Over objection from Appellants, the Ducharmes and the Audettes were permitted to bring forth their appeals to the Zoning Board. The substance of these appeals is of no consequence to the case sub judice. Rather, it is merely worth noting that these appeals prevented Appellants from progressing with their development plans.
 B Revocation of the Zoning Certificate
While the Ducharmes' and Audettes' appeals were pending before the Zoning Board, the political winds took a marked shift in Cumberland. In November 2006, *Page 6 
Daniel McKee was elected Mayor of Cumberland, defeating the incumbent, David Iwuc. With this change in administration came a series of personnel changes. Pertinent to this matter, Mayor McKee relieved Mr. Favreau of his duties and hired Raymond Madden as the new Building Official. (Madden, Nov. 15, 2007, Tr. at 9.)
On January 8, 2007, Mr. Madden commenced his employment with the Town of Cumberland. Id. at 9-10. The following day, he was called into a meeting with Mayor McKee and the acting Town Solicitor, Thomas Hefner. Id. at 17. According to Mr. Madden, during the course of this meeting, Mayor McKee requested that he review the information on Appellants' proposed C D Facility.Id. Per Mayor McKee's request, Mr. Madden reviewed and evaluated the zoning certificate request submitted to Mr. Favreau in light of the applicable Zoning Code provisions.Id. at 18-19.
On January 10, 2007, Mr. Madden delivered an opinion letter to Mayor McKee wherein he stated his conclusions regarding the proposed C D Facility. (Letter to Honorable Daniel McKee, Mayor, from Raymond Madden, (Acting) Building Official, Jan. 10, 2007.) Mr. Madden concluded that a C D Facility did not properly fall within the ambit of "[w]holesale [t]rade, within enclosed structure," and thus, the zoning certificate was erroneously issued.Id. Moreover, Mr. Madden opined that the Zoning Code did not permit the operation of a C D Facility within either a light industrial (I-1) or general industrial (I-2) zoning district.Id. Mr. Madden indicated that he would await further instruction and direction from Mayor McKee regarding how to proceed.Id. *Page 7 
Upon receipt of Mr. Madden's opinion letter, Mayor McKee sent a correspondence to Attorney Michael Horan pertaining to this matter.[6] (Letter to Michael F. Horan, Esq., from Daniel J. McKee, Mayor, Jan. 10, 2007.) Therein, presented with Mr. Madden's opinion that the zoning certificate had been erroneously issued, Mayor McKee inquired as to the legal remedies the Town of Cumberland could pursue in order to have the zoning certificate rescinded and/or revoked. Id.
On January 19, 2007, Mr. Horan issued an opinion letter to Mayor McKee. (Letter to Daniel J. McKee, Mayor, from Michael F. Horan, Esq., Jan. 19, 2007.) At the outset, Mr. Horan indicated that he concurred with Mr. Madden's determination that a C D Facility did not fall within the meaning and intent of a "[w]holesale [t]rade, within enclosed structure." Id. at 1-2. Given this fact, Mr. Horan opined that Mr. Favreau's issuance of a zoning certificate was in excess of his lawful authority, and therefore, was ultra vires. Id. at 4. Accordingly, Mr. Horan concluded that it was within the legal rights of the Town of Cumberland to revoke and nullify the zoning certificate. Id.
On January 19, 2007, following a review of Attorney Horan's opinion letter to Mayor McKee, Mr. Madden sent a notice to counsel for Appellants wherein he purported to revoke the zoning certificate. (Madden, Nov. 15, 2007, Tr. at 24-25); (Re: Notice of Revocation of Zoning Certificate of Compliance, Jan. 19, 2007.) In support thereof, Mr. Madden reiterated his conclusion that a C D Facility did not fall within the definition of "[w]holesale [t]rade, within enclosed space" set forth in the Zoning Code. (Re: Notice of Revocation of Zoning Certificate of Compliance, Jan. 19, 2007.) Further, Mr. Madden *Page 8 
stated that the Zoning Code did not allow for a C D Facility within a light industrial (I-1) zoning district.[7] Id.
On February 16, 2007, Appellants filed an appeal to the Zoning Board. Therein, Appellants challenged the legality and propriety of Mr. Madden's revocation of the zoning certificate.
 C New Zoning Certificate Requests
On February 28, 2007, while Appellants' appeal of the revocation of the zoning certificate was pending, counsel for Appellants submitted two new zoning certificate requests to Mr. Madden. Appellants' first zoning certificate request sought an opinion as to whether a C D Facility was a use permitted in a light industrial (I-1) zoning district. (Re: Request for Certificate of Zoning Compliance [C D Facility], Feb. 28, 2007.) With regard to the operation of the C D Facility, Appellants explained that:
 "The proposed Facility will operate as a licensed C D Processing Facility pursuant to the Rules and Regulations of the [Rhode Island Department of Environmental Management]. The Facility will process, reprocess, manufacture, and remanufacture construction and demolition debris, completely indoors, and will not operate and/or store any debris or materials outdoors. Construction and demolition debris will be brought to the Facility, via truck, thereafter the materials will be separated, processed, reprocessed, manufactured, remanufactured, and stored in roll-offs until loaded onto and removed primarily by rail car on a weekly basis. Importantly, the Facility shall not serve as a storage facility for scrap and waste materials, which would constitute a junkyard or a waste storage facility." Id. *Page 9 
In support of this zoning certificate request, Appellants claimed that a C D Facility fell within the ambit of various categories of uses that are permitted in a light industrial (I-1) zoning district, including: (1) "[w]holesale [t]rade, within enclosed structure; "[8] (2) "[l]umber and wood products; "[9] (3) "[r]ubber and miscellaneous plastic products; "[10] (4) "[p]aper and allied products, printing, publishing; "[11] and (5) "[s]tone, clay and glass products."[12] Id. Appellants maintained that each of these respective use provisions *Page 10 
encompassed a component of the activities that would take place at a C D Facility. Id. Thus, according to Appellants, a C D Facility was a permitted use for the Property. Id.
Appellants' second zoning certificate request sought a determination as to whether a wood and wood product processing and manufacturing facility ("Wood Processing Facility") was a use permitted in a light industrial (I-1) zoning district. (Re: Request for Certificate of Zoning Compliance [Wood Processing Facility], Feb. 28, 2007.) Unlike the C D Facility, the proposed Wood Processing Facility circumscribed the operation solely to wood products. Id. As set forth in Appellants' zoning certificate request:
 "[T]he proposed Wood Processing Facility will accept finished wood and wood products from various sources. The Facility will then process, reprocess, manufacture, and remanufacture the same, completely indoors, into different forms of wood product, such as wood pellets and/or other aggregate wood products. The newly manufactured wood products will be then shipped, primarily by rail, on a weekly basis to wholesale purchasers who will use the same for retail purposes." Id.
Given this description of the proposed facility, Appellants claimed that a Wood Processing Facility fell within the purview of "[l]umber and wood products,"[13] a permitted use for a light industrial (I-1) zoning district. Id. Therefore, according to Appellants, a Wood Processing Facility was permitted on the Property.Id.
On March 19, 2007, Mr. Madden denied Appellants' two requests for a zoning certificate. (Letter from Raymond Madden, Building and Zoning Official, to Michael *Page 11 
Kelly, Mar. 19, 2007.) According to Mr. Madden, these requests were denied on the same grounds as set forth in his January 19, 2007 correspondence in which he revoked Appellants' zoning certificate. Id.
Presented with yet another unfavorable finding from Mr. Madden, Appellants filed a second appeal to the Zoning Board on April 2, 2007, disputing Mr. Madden's denial of a zoning certificate for a (1) C D Facility, and (2) Wood Processing Facility. Therein, Appellants maintained that both a C D Facility and a Wood Processing Facility were uses permitted in a light industrial (I-1) zoning district.
 D Stipulation To Bring Development Plan Review before the Planning Board
Following an initial hearing before the Zoning Board on April 23, 2007 regarding Appellants' appeals, the parties agreed by way of stipulation to temporarily stay the proceeding pending a hearing before the Planning Board regarding the proposed C D Facility. (Stipulation, May 3, 2007.) The stipulation set forth that Appellants would submit a Development Plan Review application for the C D Facility to the Planning Board. Id. The parties agreed that in the event the Planning Board denied the application, Appellants would then recommence their appeals before the Zoning Board. Id.
In accordance with the stipulation, Appellants submitted a Development Plan Review application for the C D Facility to the Planning Board. On May 30, 2007, the Planning Board held a public hearing to address Appellants' application. (Cumberland Planning Board, May 30, 2007, Tr. at 2.) Curiously, however, the Planning Board did not consider the merits of this application. Rather, at the hearing, the Planning Director and *Page 12 
counsel for the Town recommended that the Planning Board deny the Development Plan Review because the Building Official, Mr. Madden, indicated that a C D Facility was not a permissible use for a light industrial (I-1) zoning district. Id. at 2, 4-5. Accordingly, at the conclusion of this brief hearing, the Planning Board unanimously voted to deny the Development Plan Review.Id. at 7-8. No evidence was considered in this decision. Rather, the Planning Board denied the application because "the use is not allowed, based on the [z]oning [c]ertificate being revoked on January 19th of this year; and, therefore, the Planning Board does not have jurisdiction over this matter."Id. at 7. The Planning Board noted that "[s]hould the proposed use be determined to be permissible or the Building Official's determination on the matter be set aside, the applicant may return for the full review of the Final Development Plan Application."Id. at 7-8.
Appellants appealed the Planning Board's denial of the Development Plan Review application to the Zoning Board.
 E Appeals before the Zoning Board
Appellants' outstanding appeals were brought before the Zoning Board for consideration. As noted above, Appellants' appeals pertained to (1) Building Official Madden's revocation of the zoning certificate; (2) Building Official Madden's denial of a zoning certificate for a C D Facility; (3) Building Official Madden's denial of a zoning certificate for a Wood Processing Facility; and (4) the Planning Board's denial of the Development Plan Review application. The Zoning Board consolidated the matters for review and heard all evidence pertaining thereto concurrently. Between April 23, 2007 *Page 13 
and December 17, 2007, the Zoning Board conducted seven hearings wherein it heard the testimony of seven witnesses and received a plethora of documentary evidence.
On December 17, 2007, the Zoning Board held a hearing to decide Appellants' four appeals. Following a lengthy deliberation, the Zoning Board voted to deny each respective appeal. In sum, the Board found that the Zoning Code did not permit the operation of either a C D Facility or a Wood Processing Facility within a light industrial (I-1) zoning district. Thus, according to the Board, Mr. Madden acted properly when he revoked Appellants' zoning certificate and later rejected their subsequent zoning certificate requests. Likewise, the Board found that the Planning Board properly denied Appellants' Development Plan Review application. On February 11, 2008, the Zoning Board issued three written decisions which summarized the findings and conclusions regarding Appellants' four appeals.
Appellants timely appealed each of the Zoning Board's decisions to this Court. Additional facts will be provided as necessary to the resolution of this matter.[14] *Page 14 
 II DISCUSSION
As a preliminary matter, the Court notes that Appellants' appeals of the Zoning Board's decisions upholding the revocation of the zoning certificate and the subsequent denials of zoning certificate requests implicate a standard of review which differs from that which governs Appellants' appeal from the Zoning Board's affirmation of the Planning Board's denial of the Development Plan Review application. Accordingly, for the sake of judicial efficacy and clarity of analysis, the Court will consider these respective appeals in two separate sections.
 A Zoning Certificate Appeals
Before this Court, Appellants challenge the Zoning Board's decisions holding that Mr. Madden properly revoked the zoning certificate issued by Mr. Favreau and, in turn, rightly rejected Appellants' subsequent zoning certificate requests for a C D Facility and a Wood Processing Facility. In support of these appeals, Appellants provide a plethora of procedural, substantive, and constitutional challenges to each of the Zoning *Page 15 
Board's respective decisions. Upon due consideration, however, the Court finds it unnecessary to address the issues raised by Appellants. As will be set forth herein, the Rhode Island Zoning Enabling Act ("Enabling Act") does not provide a zoning board with the requisite authority to hear and decide appeals stemming from a zoning officer's advisory opinion about a proposed use of property proffered by way of an informational zoning certificate. Thus, by purporting to render decisions on Appellants' challenges of Mr. Madden's revocation of the zoning certificate and his rejection of subsequent zoning certificate requests, the Zoning Board impermissibly exceeded its statutory authority. In light of the fact that the Zoning Board's review was not authorized by the Enabling Act, the Board's decisions stemming therefrom were void abinitio. See G.L. 1956 § 45-24-69.
 1 Standard of Review
Rhode Island General Laws 1956 § 45-24-69(a) provides this Court with the specific authority to hear appeals brought by aggrieved parties from decisions of a town zoning board of review. When a zoning board decision is properly before this Court, the standard of review is governed by G.L. 1956 § 45-24-69(d), which provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions; *Page 16 
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
 2 Law and Analysis
The instant appeals arise as a consequence of Appellants' attempt to utilize zoning certificates and other information supplied pursuant to G.L. 1956 § 45-24-54 as a means to obtain binding and enforceable determinations about a proposed development of the Property; namely, whether the proffered C D Facility or, in the alternative, Wood Processing Facility, was a permitted use for a light industrial (I-1) zoning district. The Court observes that the prior Building Official, Mr. Favreau, and his successor, Mr. Madden, purported to render such binding determinations: the former stating that the proposed C D Facility was a use allowed by right, and the latter holding that neither the C D Facility nor the Wood Processing Facility was an authorized use. Further confounding the matter, the Zoning Board heard Appellants' appeals from Mr. Madden's zoning certificate determinations and, in turn, purported to issue enforceable decisions upholding the propriety of Mr. Madden's findings. Now, as the matter has come before this Court, it is readily apparent that both the Appellants and the Town have misconstrued the legal effect of a zoning certificate as well as the review authority of a zoning board. *Page 17 
As a threshold matter, it is prudent to consider the nature and purpose, as well as the legal effect, of a zoning certificate as set forth in the Enabling Act. A zoning certificate is, by definition, "[a] document signed by the zoning enforcement officer, as required in the zoning ordinance, which acknowledges that a use, structure, building, or lot either complies with or is legally nonconforming to the provisions of the municipal zoning ordinance or is an authorized variance or modification therefrom." G.L. 1956 § 45-24-31(65). Section 45-24-54 of the Enabling Act addresses the issuance and underlying purpose of a zoning certificate. This statutory provision provides, in pertinent part, as follows:
 "The zoning ordinance must designate the local official or agency and specify minimum qualifications for the person or persons charged with its administration and enforcement, including: (1) the issuing of any required permits or certificates; (2) collection of required fees; (3) keeping of records showing the compliance of uses of land; (4) authorizing commencement of uses or development under the provisions of the zoning ordinance; (5) inspection of suspected violations; (6) issuance of violation notices with required correction action; (7) collection of fines for violations; and (8) performing any other duties and taking any actions that may be assigned in the ordinance. In order to provide guidance or clarification, the zoning enforcement officer or agency shall, upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request. In the event that no written response is provided within that time, the requesting party has the right to appeal to the zoning board of review for the determination." G.L. 1956 § 45-24-54 (emphasis added).
Separate and distinct from the enumerated administration and enforcement duties, the Legislature authorized the zoning official to issue a zoning certificate to a requesting party. G.L. 1956 § 45-24-54. However, the Legislature clearly and unambiguously *Page 18 
qualified that the furnishing of a zoning certificate was for the limited and sole purpose of "provid[ing] guidance or clarification."Id.
In considering the effect of a zoning certificate, our Supreme Court has opined that "a zoning certificate is not legally binding."Parker v. Byrne, 996 A.2d 627, 633 (R.I. 2010). Although the Supreme Court did not have occasion to elaborate on this observation, it is, in all likelihood, based on the fact that the pertinent statutory language sets forth that a zoning certificate is merely an advisory determination, designed to provide only informational assistance to the requesting party. See
G.L. 1956 § 45-24-54. Indeed, by delineating that a zoning certificate is a device for providing "guidance or clarification," the Legislature made clear that this mechanism does not serve to alter or impair the legal rights of the requesting party relative to the subject property. See id. As aptly stated by one Superior Court trial justice:
 "[A]lthough a zoning certificate may well serve as an indication about how the zoning official views the use, structure, building or lot insofar as it complies with the Ordinance — information that no doubt would be useful to property owners and others — it does not operate to create any enforceable rights or to divest existing rights." Tompkins v. Zoning Bd. of Review of the Town of Little Compton, C.A. No. 01-0204, 2003 WL 22790829, at *3 (R.I Super. Ct. Oct. 29, 2003).
Ultimately, upon consideration of the pertinent statutory framework and our Supreme Court's determination that a zoning certificate is non-binding, this Court is compelled to observe that a zoning certificate and other like instruction supplied pursuant to G.L. 1956 § 45-24-54 is merely informational, and therefore, does not provide an enforceable determination about a proposed use of property. The treatment of a zoning certificate as anything other than non-binding guidance or clarification is thus, misplaced. *Page 19 
In light of the foregoing, the Court concludes that the non-binding nature of a zoning certificate, in effect, renders its contents or any advisory information supplied by the zoning official in connection therewith — when furnished for the purpose of providing guidance or clarification about a proposed alteration, development, or use of the subject property — ineligible to be appealed to, or reviewed by, a zoning board of review.[15]
Although a zoning board of review is empowered to "hear and decide appeals [. . .] where it is alleged there is an error in any order, requirement, decision, or determination made by an administrative officer or agency [. . .]," the Enabling Act expressly provides that this review authority is circumscribed to those appeals brought by an "aggrieved party." See
G.L. 1956 §§ 45-24-57(1)(i); 45-24-63;[16] 45-24-64.[17] An "aggrieved party" is defined, in pertinent part, as "[a]ny person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town." G.L. 1956 § 45-24-31(4)(i). *Page 20 
Given our Supreme Court's determination that "a zoning certificate is not legally binding," the party requesting a zoning certificate in contemplation of future development cannot demonstrate that his or her property will be injured by the responding advisory opinion proffered by the zoning official. See Parker,996 A.2d at 633. In other words, since a zoning certificate is merely issued for "guidance or clarification," and thus, does not alter or affect the legal rights with respect to the subject property, the requesting party cannot be aggrieved by the zoning official's findings in connection therewith.[18] See
G.L. 1956 §§ 45-24-54; 45-34-31(4)(i).
It is well settled in Rhode Island that "the authority of zoning boards of review is limited in scope to that expressly conferred by statute." Franco v. Wheelock, 750 A.2d 957, 960 (R.I. 2000) *Page 21 
(citing Noonan v. Zoning Bd. of Review of Town ofBarrington, 90 R.I. 466, 159 A.2d 606 (1960)). In light of this established principle, the Court finds that since a party requesting a zoning certificate in connection with a proposed development cannot be aggrieved by the zoning official's non-binding advisory response — a necessary prerequisite for the zoning board to engage in review — the requesting party does not have a right to appeal the non-binding determination to the zoning board of review, nor is the board authorized to render a binding and enforceable decision pertaining thereto.[19] See
G.L. 1956 §§ 45-24-63; 45-24-64. Any exercise of review by a zoning board for the purpose of making a binding and enforceable decision about the propriety of a zoning *Page 22 
certificate determination would impermissibly exceed the authority conferred by the Enabling Act, and thus, would be void as a matter of law. See G.L. 1956 § 45-24-69(d)(2); see alsoFranco, 750 A.2d at 960 (holding that a zoning board of review was not authorized by the Enabling Act to render a non-binding and unenforceable advisory opinion, and thus, the supplied information was invalid); Noonan,90 R.I. at 471, 159 A.2d at 608 (concluding that "the decision of the respondent [zoning] board [of review] was clearly an exercise of power in excess of its jurisdiction and a nullity in law[]").
At this juncture, it is worth noting that a trial justice of our Superior Court has, on multiple occasions, likewise concluded that the Enabling Act does not authorize administrative review of informational determinations made in connection with a non-binding zoning certificate because of an underlying lack of aggrievement, and thus, a decision of a zoning board of review which purports to do the same must be reversed as being in excess of the board's statutory authority. See NI, Ltd. v. Duncan, C.A. No. NC 02-0573, 2004 WL 1541918 at *3-7 (R.I. Super. Ct. June 23, 2004);Inn at Cliff Walk, Inc., v. Zoning Bd. of Review of the City ofNewport, C.A. No. NC 01-0380, 2004 WL 1351155 at *26-29 (R.I. Super. Ct. June 9, 2004) (consolidated with Cohen v. Duncan, C.A. No. NC 02-0599, 2004 WL 1351155 (R.I. Super. Ct. June 9, 2004),rev'd 970 A.2d 550 (R.I. 2009)); Tompkins v. Zoning Bd. ofReview of the Town of Little Compton, C.A. No. 01-0204, 2003 WL 22790829 at *3-7 (R.I Super. Ct. Oct. 29, 2003). In so holding, the trial justice noted that this conclusion regarding the unavailability of review is confirmed by policy considerations, in light of the well-settled principles of statutory construction. See NI, Ltd.,2004 WL 1541918, at *5. Specifically, the trial justice opined that: *Page 23 
 "The framers of the Enabling Act contemplated, in G.L. § 45-24-44, that formal procedures would be established whereby, upon submission of a `substantially complete' application for development `submitted for approval to the appropriate review agency in the city or town,' a party proposing development would gain vested rights to have the conformity of that development judged by existing ordinance. It would be an absurd construction to find, within the Enabling Statute, an alternative procedure whereby a party could gain the same rights by means of an informational request propounded to a zoning officer. Thus, any such alternative procedure could vest no rights, and a party wishing to act upon information obtained thereby would still be required to get binding approval through a formal application process. Clearly, the legislature did not intend the waste of resources that would result from redundant administrative or judicial review processes, as would be the case if review was available for the first, nonbinding decision." Id.
Moreover, the trial justice noted that providing administrative or judicial review of a zoning official's advisory and non-binding opinion set forth in connection with a zoning certificate request would encourage premature litigation involving abstract disagreements not yet ripe for consideration. Id. at *6. Specifically, the trial justice observed that "[t]he [Enabling Act's] requirement of a complete application for relief assures a sincere intent to develop, and thus a real case or controversy, and, in particular, discourages judicial involvement in local zoning matters when this involvement might ultimately become unnecessary as a result of an applicant's changed plans." Id.
(internal citation omitted). Accordingly, the trial justice reasoned that "[a]bsent an application evincing a sincere intent to develop — and not merely a request for an opinion or for `guidance or clarification' — is a case ripe for review." Id.
(internal citation omitted). While the Court is mindful that this trial justice's observations and conclusions are not binding on the case *Page 24 sub judice, upon due consideration, the Court finds the same persuasive and applies such reasoning to the instant matter.
It is not lost on this Court that a party contemplating a potential alteration or development of his or her property may desire an initial assessment from a zoning official regarding how the conceived project would be received by the municipality before expending time and money to formulate the requisite formal plans or application. However, while sympathetic to this notion, the Court is nonetheless compelled to observe that the sole means afforded by the Legislature to make such an assessment are merely informational — the substance of which does not bestow any binding or enforceable rights with respect to proffered proposal.See G.L. 1956 § 45-24-54. Consequently, it is imperative that a recipient of a zoning certificate or other informational determinations made pursuant to G.L. 1956 § 45-24-54 take heed of the fact that the proffered guidance or clarification does not carry with it assurances of finality, nor does it impart a right of appeal. Rather, presented with such non-binding information, the recipient must determine whether to proceed with development plans in accordance with, or in spite of, the advisory opinion proffered by the zoning official. Irrespective of how the party opts to proceed, the requisite submission of a formal application for construction or development affords the appropriate review agency in the city or town an informed basis to adjudge the propriety of the applicant's proposed course of action, and any binding determinations or decisions stemming therefrom would be properly subject to administrative and judicial review. See
G.L. 1956 § 45-24-63; 45-24-64. While the Court is mindful that this path to obtain a right of appeal is more arduous and perhaps *Page 25 
more costly, our Enabling Act — by qualifying that the existence of an aggrieved party is a prerequisite for a zoning board to engage in review — commands such a result. See id.
In the case at bar, the Court observes that in March 2006, Appellants obtained a zoning certificate from the Building Official, Mr. Favreau, indicating that the proposed C D Facility was a use allowed by right in a light industrial (I-1) zoning district. However, the election of a new Mayor in Cumberland led to the appointment of a new Building Official, Mr. Madden, who had a differing interpretation of the Zoning Code. Indeed, after taking office, Mr. Madden reviewed Appellants' zoning certificate request and concluded that the proposed C D Facility was not a permitted use for a light industrial (I-1) zoning district. Consequently, Mr. Madden sent Appellants a notice wherein he purported to revoke the zoning certificate on the grounds that the information supplied by Mr. Favreau was erroneous. Thereafter, Appellants submitted two new zoning certificate requests, asking for determinations about whether a C D Facility and a Wood Processing Facility were permitted uses in a light industrial (I-1) zoning district. To these requests, Mr. Madden responded with information, pursuant to G.L. 1956 § 45-24-54, setting forth his conclusion that neither use was permitted by right. As noted above, it was from these acts by Mr. Madden — namely, the revocation of the zoning certificate and the subsequent denials for the same — that Appellants brought their appeal to the Zoning Board. In due course, the Zoning Board issued decisions purporting to confirm the propriety of Mr. Madden's findings. From these decisions, Appellants filed the instant appeals.
Dispositive of the instant appeals, however, is the fact that the non-binding nature of a zoning certificate and other information provided pursuant to G.L. 1956 § 45-24-54 *Page 26 
renders any determinations made by a zoning official in connection therewith unappealable by virtue of the lack of an aggrieved party. Indeed, the Court observes that when Mr. Madden informed Appellants that the zoning certificate provided by Mr. Favreau was erroneously issued, and later rejected Appellants' subsequent zoning certificate requests, Appellants were not aggrieved as these informational determinations were non-binding and unenforceable, and thus, they did not affect the legal rights with respect to Appellants' proposed development. See
G.L. 1956 § 45-24-31(4)(i). Consequently, since Appellants were not aggrieved by the information supplied by Mr. Madden, they were not entitled to appeal the non-binding determinations to the Zoning Board, nor was the Zoning Board authorized to hear and decide any appeals pertaining thereto. See
G.L. 1956 §§ 45-24-63; 45-24-64.
 3 Conclusion
In light of the non-appealable nature of Mr. Madden's findings, the Court concludes that the Zoning Board exceeded its statutory authority when it purported to render binding decisions upholding the revocation of the zoning certificate and the subsequent denials of the zoning certificate requests. Therefore, these decisions of the Zoning Board — issued as Instrument number 25341 and 25342, respectively — must be reversed as being in excess of the authority granted to it by statute or ordinance. G.L. 1956 § 45-24-69(d)(2). *Page 27 
 B Development Plan Review Appeal
Appellants' third and final appeal challenges the Zoning Board's decision upholding the Planning Board's denial of Appellants' Development Plan Review application. As noted above, following an initial hearing before the Zoning Board regarding Appellants' zoning certificate appeals, the Parties agreed by way of stipulation to temporarily stay the proceeding in order to allow Appellants to submit a Development Plan Review application to the Planning Board. After a brief hearing on May 30, 2007, the Planning Board unanimously voted to deny Appellants' application. However, in arriving at this decision, the Planning Board did not receive any testimony or evidence concerning the application. Rather, per the recommendation of the Planning Director and counsel for the Town, the Planning Board exclusively relied on the non-binding determination by Mr. Madden that the proposed use was not allowed in a light industrial (I-1) zoning district. Upon appeal, the Zoning Board voted to uphold the Planning Board's denial of Appellants' Development Plan Review application. In so holding, the Zoning Board opined that:
 "[T]he Planning Board acted correctly with the information they had. The record would indicate they had reasons for denying this Development Plan Review, and the Zoning Board is not supposed to substitute it's [sic] judgment for theirs. Since the Planning Board deferred to the Use determination by the current Building Official Mr. Madden, and since the Zoning Board has found that to be correct, then the Planning Board's action was correct." (Decision, No. 25340, Feb. 11, 2008, at 2.)
From this decision of the Zoning Board, Appellants filed a timely appeal to this Court. *Page 28 
 1 Standard of Review
Under the Rhode Island Land Development and Subdivision Review Enabling Act ("Development Review Act"), review of a planning board's decision is limited. When reviewing the decision of a planning board, a zoning board of review acting as a board of appeal "shall not substitute its own judgment for that of the planning board [. . .] but must consider the issue upon the findings and record of the planning board [. . .]." G.L. 1956 § 45-23-70. Upon review of the record of the planning board, "the board of appeal shall not reverse a decision of the planning board [. . .] except on a finding of prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record." Id.
Section 45-23-71 provides this Court with the specific authority to review decisions of a town zoning board of review sitting as the board of appeal from decisions of the planning board. In conducting this review, the Court "shall not substitute its judgment of that of the planning board as to the weight of the evidence on questions of fact." G.L. 1956 § 45-23-71(c). When a decision of the board of appeal is properly before this Court, the standard of review is governed by G.L. 1956 § 45-23-71(c), which provides:
 "The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions; *Page 29 
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Judicial review of a board of appeal's decision is not de novo, and thus, the Court does not "consider the credibility of witnesses, weigh the evidence, or make its own findings of fact."Munroe v. Town of East Greenwich,733 A.2d 703, 705 (R.I. 1999) (quoting Kirby v. Planning Bd. ofReview of Middletown, 634 A.2d 285, 290 (R.I. 1993)). Rather, the Court's review is "confined to a search of the record to ascertain whether the board's decision rests upon `competent evidence' or is affected by an error of law." Id. (quoting Kirby,634 A.2d at 290). As set forth in G.L. 1956 § 45-23-71(c), the Court must conduct its review of the proceedings before the planning board — not the board of appeal — in order to determine whether the underlying decision is supported by competent evidence.See G.L. 1956 § 45-23-71(c).
 2 Law and Analysis
On appeal to this Court, Appellants argue, as a threshold issue, that the Planning Board's decision to deny the Development Plan Review application lacked support based on the evidence in the record, and thus, the Zoning Board's affirmation of the same is clearly erroneous in view of the reliable, probative, and substantial evidence in the record. The Court agrees. *Page 30 
Development Plan Review is, by definition, a "process whereby authorized local officials review the site plans, maps, and other documentation of a development to determine the compliance with the stated purposes and standards of the ordinance." G.L. 1956 § 45-24-31(21). The Enabling Act authorizes municipalities to adopt ordinance provisions requiring Development Plan Review for proposed land use projects. See G.L. 1956 § 45-24-49.
At the time Appellants' application came before the Planning Board, the Development Plan Review process was set forth in Article 5, Section 5-17 of the Zoning Code. This provision, adopted pursuant to G.L. 1956 §§ 45-23-50 and 45-24-49, specifies that "[t]he Cumberland Planning Board shall have the administrative power and duty, in accordance with the requirements of the zoning ordinance and the land development and subdivision regulations [. . .] to review and approve all plans subject to Development Plan Review." Cumberland Zoning Ordinance, Art. 5, § 5-17(a). Pertinent to the instant matter, the Zoning Code mandates that "[a]ny proposed nonresidential development, which[,] in aggregate, exceeds 1,000 square feet" is subject to Development Plan Review.Id. at Art. 5, § 5-17(b)(1).
In considering a Development Plan Review application, the Zoning Code sets forth that the Planning Board is charged with the responsibility to ensure that:
 "(1) The granting of approval will not result in conditions inimical to the public health, safety and welfare;
 (2) The requested action will not alter or impair the intent or purpose of [the zoning] ordinance or the comprehensive plan upon which this section is based;
 (3) The plans for such projects comply with all the requirements of [the zoning] ordinance and the [land development and subdivision] regulations; *Page 31 
 (4) Any conditions or restrictions that are necessary to ensure that these findings have been met have been incorporated into the vote of approval." Id. at Art. 5, § 5-17(e).
The Planning Board may not grant development plan approval unless and until these required findings are made. See id.
When a reviewing authority denies a Development Plan Review application in which the applicant contends the proposed use is allowed by right, the Enabling Act contemplates that the denial may be appealed to the zoning board of review. See
G.L. 1956 § 45-24-49(b). Importantly, however, the General Laws provide that the Development Review Act is the applicable authority "[i]n all cases of development plan review, as provided for in § 45-24-49 of the Zoning Enabling Act of 1991, where a municipality has established, within their zoning ordinance, the procedures for planning board review of applications." G.L. 1956 § 45-23-27(a)(3). Consequently, pursuant to the Development Review Act, the zoning board of review acts in the capacity as the board of appeal when an aggrieved party brings an appeal from a decision of a planning board regarding a development plan review application. See G.L. 1956 §§ 45-23-57;45-23-66; 45-23-67. In accordance with this statutory framework, the Cumberland Land Development and Subdivision Regulations ("Development Regulations") establish that "[t]he Zoning Board of Review of the Town of Cumberland shall serve as the Board of Appeals to hear appeals of decisions of the Planning Board [. . .] on matters of review and approval of [. . .] projects subject to Development Plan Review." Cumberland Development Regulations, § 3(M). *Page 32 
When the zoning board of review serves as the board of appeal to hear and decide an appeal from a decision of the planning board, both the Development Review Act and the Cumberland Development Regulations specify that the "board of appeal shall not substitute its own judgment for that of the planning board [. . .] but must consider the issue upon the findings and record of the planning board [. . .]." G.L. 1956 § 45-23-70(a); see also Cumberland Development Regulations, § 3(M). In due course, "[t]he board of appeal shall not reverse a decision of the planning board [. . .] except on a finding of prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record."Id.
In light of the foregoing, the Court is compelled to observe that the Zoning Board erred when it issued a decision upholding the Planning Board's denial of Appellants' Development Plan Review application. As noted above, in considering a Development Plan Review application, the Planning Board is charged with the responsibility to receive evidence and make certain findings with respect to the proposed project. Indeed, as noted above, the Planning Board is required to make the following findings:
 "(1) The granting of approval will not result in conditions inimical to the public health, safety and welfare;
 (2) The requested action will not alter or impair the intent or purpose of [the zoning] ordinance or the comprehensive plan upon which this section is based;
 (3) The plans for such projects comply with all the requirements of [the zoning] ordinance and the [land development and subdivision] regulations;
 (4) Any conditions or restrictions that are necessary to ensure that these findings have been met have been incorporated into the vote of approval." Cumberland Zoning Ordinance, Art. 5, § 5-17(e) (emphasis added). *Page 33 
Notwithstanding these requirements, the Planning Board failed to make any findings of fact or conclusions of law with respect to the proposed C D Facility. In fact, it appears the Planning Board did not meaningfully consider Appellants' Development Plan Review application when it voted for denial. Rather, as the basis for the denial, the Planning Board exclusively relied upon the non-binding determination by the Building Official, Mr. Madden, that the proposed C D Facility was not allowed in a light industrial (I-1) zoning district.[20] Consequently, the Planning Board's denial of the Development Plan Review application yielded a record which was devoid of any evidence, factual findings, or conclusions of law to substantiate its decision.
Given that the Zoning Board acted in its capacity as the Board of Appeals with respect to Appellants' appeal of the Planning Board's denial of the Development Plan Review application, the Board was required to "consider the issue upon the findings and record of the Planning Board [. . .]." Cumberland Development Regulations, Sec. 3(M); see also G.L. 1956 § 45-23-70(a). However, as noted above, the Planning Board did not make any substantive findings to facilitate review before the Zoning Board. Therefore, the Zoning Board should have reversed the Planning Board's decision on the grounds of "lack of support by the weight of evidence in the record" and remanded the matter to the Planning Board for further consideration. See id. Yet, notwithstanding the insufficiency of the record, the Zoning Board improperly proceeded to uphold the Planning Board's *Page 34 
denial of Appellants' Development Plan Review application, ostensibly based on the evidence submitted in connection with consolidated zoning certificate appeals. Given that the Zoning Board, acting as the Board of Appeal, was not authorized to conduct this de novo review, but rather, was charged with merely reviewing the findings and record of the Planning Board, the Zoning Board's decision cannot stand. See id.
 3 Conclusion
In light of the fact that the Planning Board's denial of Appellants' Development Plan Review application was devoid of any findings of fact or conclusions of law, and the Zoning Board's review of the same was confined to the record of the Planning Board, the Court concludes that the Zoning Board's decision to uphold the Planning Board's denial of the Development Plan Review application was made upon unlawful procedure, affected by error of law, and clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. G.L. 1956 § 45-23-71(c). This decision of the Zoning Board — issued as Instrument number 25340 — is reversed, and the matter is remanded to the Planning Board for consideration of Appellants' Development Plan Review application.
Counsel shall submit an appropriate order consistent with this Decision.
[1] The Court observes that the Cumberland Zoning Board purported to act in its capacity as the Board of Appeals with respect to each of Appellants' appeals. However, as will be discussed herein, the Board acted as the Zoning Board of Review with respect to the zoning certificate appeals, and served as the Board of Appeals when it reviewed the Planning Board's denial of the Development Plan Review application.
[2] The Zoning Board combined the appeals pertaining to the denial of a zoning certificate for a construction and demolition facility and the denial of a zoning certificate for a wood processing facility into one written decision.
[3] The Court notes that on October 7, 2009, the Cumberland Town Council repealed the then existing Zoning Ordinance and replaced it with an entirely new Zoning Ordinance. See Cumberland, RI, Ordinance Related to the Zoning Ordinance (Oct. 7, 2009). However, since the commencement of the instant appeals predated the enactment of the new Zoning Ordinance, the Court will address the former provisions.
[4] In Cumberland, the Building Official also serves as the Zoning Enforcement Officer. See Cumberland Zoning Ordinance, Art. 10, § 1 ("Building official. The building official of the town who is also the zoning enforcement officer.").
[5] At all pertinent times, "[w]holesale [t]rade, within enclosed structure" was set forth in Art. 3, § 3-4, Appendix A, Use Code 51 of the Zoning Code, and was defined to include the following:
 "[A]ccessory storage, building materials or lumber yard (retail also permitted), contractor's equipment rental, storage and maintenance; drugs, chemicals and allied products; durable goods and apparel; electrical and electronic goods and hardware, plumbing, heating equipment and supplies (retail also permitted); farm products; groceries and related products; household goods; machinery equipment and supplies; motor vehicles and automotive equipment and general warehouse."
[6] Mayor McKee did not consult with the Town Solicitor, Mr. Hefner, regarding this matter because Mr. Hefner had previously been involved in the Audettes' appeal of Appellants' zoning certificate. (Letter to Michael F. Horan, Esq., from Daniel J. McKee, Mayor, Jan. 10, 2007.)
[7] With Mr. Madden's revocation of the zoning certificate, the Ducharmes' and Audettes' appeals were terminated by agreement of the Parties.
[8] Cumberland Zoning Ordinance, Art. 3, § 3-4, Appendix A, Use Code 51, supra note 5.
[9] At all pertinent times, "[l]umber and wood products" was set forth in Art. 3, § 3-4, Appendix A, Use Code 72 of the Zoning Code, and was defined to include the following:
 "Furniture and fixtures manufacturing; household and office furniture; millwork veneer, plywood and prefabricated structural wood products; partitions, shelving, lockers and office and store fixtures; sawmills and planing mills, signs and advertising displays; toys, amusement, sporting and athletic goods, wood containers; and other articles and merchandise made from wood or wood products."
[10] At all pertinent times, "[r]ubber and miscellaneous plastic products;" was set forth in Art. 3, § 3-4, Appendix A, Use Code 76 of the Zoning Code, and was defined to include the following:
 "Manufacturing advertising display signs, floor covering, miscellaneous plastic products, reclaiming rubber, rubber footwear, sporting goods and stamps, toys and novelties, rubber manufacture or treatment; tire manufacturing, tire retreading, tire recapping."
[11] At all pertinent times, "[p]aper and allied products, printing, publishing;" was set forth in Art. 3, § 3-4, Appendix A, Use Code 73 of the Zoning Code, and was defined to include the following:
 "Books, newspaper, and periodicals; printing, binding, and publishing; building paper and building paper board, converted paper, paperboard, and paperboard products; industrial printing, including manifold business forms, greeting cards; paperboard containers and boxes."
[12] At all pertinent times, "[s]tone, clay and glass products;" was set forth in Art. 3, § 3-4, Appendix A, Use Code 77 of the Zoning Code, and was defined to include the following:
 "Manufacturing, compounding, assembling or treating articles or merchandise from the following prepared materials; brick and tile, cement and cement products; concrete, gypsum and plaster products, cut stone and stone products manufacturing, flat glass, glass and glass ware, glass tubing, neon signs, pottery and related products, and structural clay products. Above products may be fired only in kilns powered and/or heated by electricity or gas."
[13] Cumberland Zoning Ordinance, Art. 3, § 3-4, Appendix A, Use Code 72, supra note 9.
[14] Pursuant to G.L. 1956 § 45-24-69, Appellants have filed a motion to supplement the record with four exhibits that were not submitted during the course of their appeals before the Zoning Board. These four exhibits are (1) a campaign flyer and various newspaper articles which address Daniel McKee's Cumberland mayoral campaign; (2) a transcript of the deposition of Thomas Hefner, the Cumberland Town Solicitor, conducted on December 1, 2008; (3) transcripts of the deposition of Raymond Madden, the Cumberland Building Official, conducted on May 2, 2008 and June 17, 2008; and (4) transcripts of the deposition of Daniel McKee, the Mayor of Cumberland, conducted on August 12, 2008 and February 6, 2009. Appellants pray that the Court consider the proffered exhibits as evidence of a nefarious "political conspiracy" among various Cumberland officials, the objective of which was to ensure that Appellants were unable to proceed with their development plans. Appellants maintain that the efforts of these town officials amounted to and resulted in a denial of their due process rights afforded by the Rhode Island Constitution.
Section 45-24-69 provides that when the Superior Court reviews a zoning board's decision, additional evidence may be presented in either of two ways. First, if the additional evidence is material, the Court may grant leave to present the additional evidence before the zoning board. G.L. § 1956 45-24-69(b). Before the Court will grant leave, however, the moving party must demonstrate that there were good reasons for failing to present the evidence before the zoning board. Id. Second, if the Court finds, during its consideration of the record, that "additional evidence is necessary for the proper disposition of the matter," the Court may receive the evidence in open court. G.L. § 1956 45-24-69(c). Thereupon, the additional evidence is included as part of the record for the Court's review.Id.
As will be discussed herein, the Court finds that the Zoning Board's decisions were in excess of the authority conferred by the Rhode Island General Laws, and therefore, must be reversed. In light of this threshold deficiency in the Zoning Board's decisions, Appellants' constitutional challenges need not be addressed. Accordingly, the Court finds that the proffered exhibits are not "necessary for the proper disposition of the matter," and thus, Appellants' motion to supplement the record is denied.See id.
[15] While G.L. 1956 § 45-24-54 grants a requesting party the right to bring a request for a zoning certificate or other information to the zoning board of review, the statute expressly limits this "right of appeal" to situations when the zoning official fails to respond to the requesting party within fifteen days of the written request. See G.L. 1956 § 45-24-54. A plain reading of the statute reveals that, in this situation, the zoning board would act in the place of the zoning enforcement officer, and the issuance of a zoning certificate or the provision of information in accordance with G.L. 1956 § 45-24-54 would likewise be to "provide guidance or clarification." See id.
[16] General Laws 45-24-63 provides, in pertinent part, as follows:
 "A zoning ordinance adopted pursuant to this chapter shall provide that an appeal from any decision of an administrative officer or agency charged in the ordinance with the enforcement of any of its provisions may be taken to the zoning board of review by an aggrieved party." G.L. 1956 § 45-24-63(a) (emphasis added).
[17] General Laws 45-24-64 provides, in pertinent part, as follows:
 "An appeal to the zoning board of review from a decision of any other zoning enforcement agency or officer may be taken by an aggrieved party." G.L. 1956 § 45-24-64 (emphasis added).
[18] A Superior Court trial justice has opined that a situation could arise where an individual would be aggrieved by a non-binding determination by a zoning official. Specifically, by way of example, the trial justice noted that there could be a circumstance in which:
 "[A] property owner requires a zoning certificate confirming the current status of the property for the purpose of, say, obtaining a mortgage or marketing the property. Were the zoning official to issue a zoning certificate containing incorrect information that the property was in violation of the local ordinance that, in turn, prevented the property owner from being able to obtain a mortgage or to sell the property, the property owner may well be aggrieved of that determination for purposes of an appeal notwithstanding the non-binding nature of the certificate." Tompkins, 2003 WL 22790829, at *5 n. 10.
Mindful of these potential situations, the above discussion regarding the unappealability of a zoning certificate or other information supplied pursuant to G.L. 1956 § 45-24-54 is confined to situations in which the requesting party seeks to obtain a zoning official's advisory determination in connection with potential development of, construction on, or alteration to, the subject property. In these instances, a zoning official's non-binding response to a zoning certificate request would not alter or affect the legal rights of the requesting party with respect to the contemplated project on the subject property, and therefore, the requesting party would not be aggrieved by the zoning official's determination.
[19] It is prudent to note that in the case of PawtucketTransfer Operations, LLC v. City of Pawtucket, our Supreme Court was called upon to review an appeal wherein the underlying dispute involved a situation where a party received a zoning certificate which a planning official subsequently determined to be invalid.See 944 A.2d 855 (R.I. 2008). In that case, the plaintiff obtained a zoning certificate indicating that a development plan was in conformance with the zoning code. Id. at 857. However, shortly thereafter, the director of the Department of Planning and Redevelopment for the City informed the plaintiff that the zoning certificate was invalid because the proposed development was not an allowed use for the subject property. Id. The plaintiff petitioned the zoning board for review, although the record was unclear exactly what was being appealed. Id. at 857 n. 1. Following a hearing, the zoning board determined the proposed use was not permitted. Id. at 857. Thereafter, the plaintiff brought an appeal from the zoning board's decision to the Superior Court. Id. Upon review, the trial justice reversed the zoning board's decision, finding that the proposed use was allowed on the subject property. Id. at 858. The trial justice's decision was appealed to the Supreme Court by the City. Id.
When the matter came before the Supreme Court, however, the Court expressly confined its review to the substance of the trial justice's decision; namely, whether the proposed development was an authorized use for the property. Id. Thus, in its decision, the Court did not have occasion to consider the legal effect or significance of a zoning certificate or whether the information issued in connection therewith could properly be appealed to the zoning board for review. See id. at 858-61.
It should be noted, however, that subsequent to the Supreme Court's decision in Pawtucket Transfer Operations, the Court directly addressed the effect of a zoning certificate issued pursuant to G.L. 1956 § 45-24-54 in the matter of Parker v.Byrne. See 996 A.2d at 633. In due course, as noted above, upon consideration of the pertinent statutory framework, the Court concluded that "a zoning certificate is not legally binding."Id.
[20] As noted above, Mr. Madden's findings with respect to Appellants' zoning certificate request was not legally binding and did not serve to create any enforceable determinations about the proposed development. Thus, while the Planning Board could certainly consider the Building Official's interpretation of the Zoning Code, his opinion could not operate to abrogate the Planning Board's responsibility to independently assess and decide the propriety of the proffered Development Plan Review application. *Page 1